Bryan, Trustee, *v.* Home Insurance Company of New York, Appellant.

Argued September 29, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Henry MacDonald,* with him *M. E. Graham* and *Gunnison, Fish, Gifford & Chapin,* for appellant.

*Elmer L. Evans* and *Clarence T. Bryan,* for appellee.

OPINION BY BALDRIGE, J., November 19, 1936:

On April 15, 1931, the defendant company issued a $1,000 fire insurance policy to Thomas Schock, $700 of which covered a barn. The policy contained a standard mortgagee clause, in favor of C. Harrison Lund, who held a mortgage on the Schock farm to secure a debt of $1,000. The barn was totally destroyed by fire on May 24, 1931. Schock, the owner, was convicted of arson for causing this fire, thus relieving the insurance company from liability to him on the policy. The mortgagee filed a proof of loss on June 30, 1931, and demanded $700 from the defendant, which it refused to pay. Subsequently, Lund secured a purchaser for the farm and had Schock, then in prison, execute a deed to the purchaser. The purchase price of $300 was paid to Lund and credited on the mortgage debt. To give the purchaser a clear title, Lund, on December 11, 1931, satisfied the mortgage, but had noted on the record that he was not releasing the defendant from liability under the policy. On May 21, 1932, Lund instituted a suit against the insurance company, and later, having been adjudicated a bankrupt, his trustee was substituted as plaintiff.

The principal ground of defense at the trial, and the sole question here, is that Lund, having satisfied the mortgage after the fire, defeated the insurer's right of subrogation, and that the insurer was therefore discharged of its liability under the policy.

The trial of the case resulted in a verdict in favor

of the plaintiff for the sum of $700, the amount of his claim. Motions for judgment n.o.v. and a new trial were denied, but the refusal of a new trial was conditioned on the plaintiff's remitting one-half the amount of the verdict, as the trial judge was not convinced that the barn was worth more than $350. This was done and judgment was entered accordingly.

The mortgagee clause reads as follows: "Whenever this Company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the Mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the parties to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of his claim."

The facts in this case are very similar to those in *Brownsville Second Natl. Bank v. L. & L. Ins. Co.*, 298 Pa. 53, 148 A. 35. There, the plaintiff held a mortgage against the insured property. The policy contained a subrogation mortgagee clause identical with the one involved in the instant case. Suit was brought by the mortgagee to recover from the insurer the loss of the property by fire. The insurer, in its affidavit of defense, offered to pay its proportion of the loss (there being other policies involved) upon acknowledgment of subrogation by the mortgagee to the extent of the payment made, and, in an amended affidavit of defense, set up that the insurer was relieved of all liability because the plaintiff had, pending the suits, foreclosed the mortgage and caused the property to be sold at sheriff's sale

for a nominal price, thus defeating its right to be subrogated. The Supreme Court, in affirming plaintiff's judgment, held that the defense set up could not prevail. Mr. Justice SCHAFFER, the writer of that opinion, pointed out that actual payment under the express provisions of the mortgagee clause was necessary to entitle the insurer to subrogation. This is in accordance with the uniform rule applicable to subrogation. "It is generally held that the doctrine of subrogation requires that the person seeking its benefit must have paid a debt due to a third person before he can be substituted to that person's rights; and that it is not a liability to pay but an actual payment to the creditor which raises the equitable right to subrogation": 25 R. C. L. page 1315; *Insurance Co. of North America v. Fidelity Title, etc., Co.,* 123 Pa. 523, 16 A. 791; *Gawthrop Co. v. Fibre Specialty Co. et al.,* 257 Pa. 349, 101 A. 760. The appellant here not only failed to offer to pay the loss, but, on demand, refused to pay it. It, therefore, is not entitled to subrogation.

Respecting the effect of the foreclosure, it is apparent from the mortgagee clause that in no event was the right of the mortgagee to recover the debt due him to be delayed or defeated by any action or claim of the insurer, or his rights under the policy to be affected thereby. The mortgagee clause expressly so stipulates in stating: "But no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of his claim." The insurer's position that the mortgagee, although he waited almost six months to be paid by the insurer, lost the protection the policy afforded by satisfying the mortgage so that he might recover part of the indebtedness due him is not tenable. Furthermore, the defendant has not been harmed. The insurer, to avail itself of the equitable doctrine of subrogation, was expressly required under the mortgagee clause, as noted above, either to pay the amount of the

loss, which it did not do or to pay the mortgagee all of the principal debt, to wit, $1,000 and interest. If this debt had been paid by the insurer, it would have resulted in its acquiring a mortgage of $1,000 on a property which sold for $300. Thus, it would have been out of pocket $700 instead of $350, the amount of the judgment. It was not even alleged, certainly not proven, that the price of $300 was unfair; to the contrary, the evidence produced tends to indicate that it was adequate.

In the Brownsville Second National Bank case, supra, as here, *Molaka v. Ins. Co.*, 29 Pa. Superior Ct. 149, was relied upon. But that case is distinguishable as the mortgagee clause is different in its terms, and there it was shown that the mortgagee surrendered another policy of insurance, the proceeds of which, if collected, would have been sufficient to pay the whole debt, while, here, instead of giving up something, the mortgagee sold the property, thus partially liquidating the debt due him.

It is unnecessary to consider cases in other jurisdictions, many of which are not in conflict with the view herein expressed, as we think the Brownsville Second National Bank case, supra, is controlling.

Judgment affirmed.