904 A.2d 858

**Jonathan WIRTH Individually and on Behalf of all others Similarly Situated, Appellant**

v.

**AETNA U.S. HEALTHCARE, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 2005.

Decided Aug. 22, 2006.

314

Scott B. Cooper, Harrisburg, Ronald Jay Smolow, for Jonathan Wirth.

Philip A. Ryan, Philadelphia, for Pennsylvania Defense Institute.

Matthew Stephen Crosby, Harrisburg, for PA Trial Lawyers Association.

Marica Mary Waldron, for U.S. Court of Appeals for the Third Circuit.

Raymond Adam Quaglia, Philadelphia, for Aetna U.S. Healthcare.

Michael Patrick Zipfel, Carl D. Buchholz, III, Philadelphia, for HealthAmerica Pennsylvania, Inc., et al.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice NEWMAN.

The United States Court of Appeals for the Third Circuit ("the Third Circuit") petitioned this Court for certification of a question of Pennsylvania law.[1] Writing for the Third Circuit, Judge Marjorie O. Rendell sought certification of the following question: whether a health maintenance organization (HMO) is exempt, by virtue of the Pennsylvania Health Maintenance Organization Act (HMO Act), 40 P.S. § 1560(a), from comply-

---

1. Pursuant to this Court's Internal Operating Procedures, we may accept certification of questions from any United States Court of Appeal. *See* 204 Pa.Code § 29.451(1)(b); Internal Operating Procedures, Rules Regarding Certification of Questions of Pennsylvania Law.

ing with the anti-subrogation provision of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1720? We granted the Petition for Certification of a Question of Law on July 8, 2005. After careful consideration, we answer the question in the affirmative, and hold that an HMO is exempt from the anti-subrogation provision of the MVFRL.

## Facts and Procedural History

Jonathan Wirth (Wirth) received medical care for injuries he sustained in a motor vehicle accident on October 5, 2002. His medical care was covered under an HMO contract issued by Aetna U.S. Healthcare (Aetna) to Wirth's father. The Certificate of Coverage issued to Wirth's father provided:

> If HMO provides health care benefits under this Certificate to a Member for injuries or illness for which a third party is or may be responsible, then HMO retains the right to repayment of the full cost of all benefits provided by HMO on behalf of the Member that are associated with the injury or illness for which the third party is [or may be responsible]. HMO's rights of recovery apply to any recoveries made by or on behalf of the Member from the following third-party sources, as allowed by law, including but not limited to: payments made by a third-party tortfeasor or any insurance company on behalf of the third-party tortfeasor. . . .

> The Member specifically acknowledges HMO's right of subrogation. When HMO provides health care benefits for injuries or illnesses for which a third party is or may be responsible, HMO shall be subrogated to the Member's rights of recovery against any third party to the extent of the full cost of all benefits provided by HMO, to the fullest extent permitted by law. HMO may proceed against any third party with or without the Member's consent.

Reproduced Record (R.R.) 66a. The effective date of the Group Agreement was September 1, 2002.

After Wirth recovered a settlement from the third-party tortfeasor, Aetna asserted a subrogation lien for its costs.

Wirth paid Aetna $2,066.90 to release its lien. He then filed a class action suit in the Court of Common Pleas of Bucks County, alleging, *inter alia,* unjust enrichment and that the subrogation lien violated Section 1720 of the MVFRL, which provides:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits).

75 Pa.C.S. § 1720.[2]

Aetna removed the suit to federal district court, asserting that Wirth's suit was a civil action under ERISA to recover benefits, and therefore, was preempted completely. Thereafter, Aetna filed a Motion to Dismiss, contending that it is exempt from Section 1720 of the MVFRL because of Section 1560(a) of the HMO Act, which provides:

> (a) Except as otherwise provided in this act, a health maintenance organization operating under the provisions of this act shall not be subject to the laws of this State now in force relating to insurance corporations engaged in the business of insurance nor to any law hereafter enacted relating to the business of insurance unless such law specifically and in exact terms applies to such health maintenance organization. For a health maintenance organization established, operated and maintained by a corporation, this exemption shall apply only to the operations and subscribers of the health maintenance organization.

40 P.S. § 1560(a). The federal district court agreed with Aetna, concluding that nothing in Section 1720 of the MVFRL

---

2. By Act of July 2, 1993, P.L. 190 (Act 44), the legislature repealed these provisions as they relate to workers' compensation benefits.

"specifically and in exact terms" applies to HMOs as required by Section 1560 of the HMO Act. Accordingly, the federal district court granted the Motion to Dismiss filed by Aetna and dismissed Wirth's claims.

On appeal, the Third Circuit concluded that the seemingly incongruous statutory provisions should be decided by this Court before it renders a final decision in this matter. Therefore, it certified the question to us, which is set forth above.

## Discussion

### Statutory Interpretation

In 1972, the General Assembly promulgated the HMO Act, 40 P.S. §§ 1551–1584. Section 1552 of the Act provides:

The purpose of this act is to permit and encourage the formation and regulation of health maintenance organizations and to authorize the Secretary of Health to provide technical advice and assistance to corporations desiring to establish, operate and maintain a health maintenance organization to the end that increased competition and consumer choice offered by diverse health maintenance organizations can constructively serve to advance the purposes of quality assurance, cost-effectiveness and access.

40 P.S. § 1552. Consistent with this goal, the General Assembly enacted Section 1560(a) of the Act, which provides that an HMO operating pursuant to the Act shall not be subject to "the laws of this State now in force relating to insurance corporations engaged in the business of insurance nor to any law hereafter enacted relating to the business of insurance unless such law specifically and in exact terms applies to such health maintenance organization." Aetna asserts that the plain language of the relevant statute exempts it from the anti-subrogation provisions of Section 1720 of the MVFRL because Section 1720 does not provide "specifically and in exact terms that it applies to a health maintenance organization."

Wirth, however, contends that the "plain, expansive and all-inclusive" language of Section 1720, which provides for "no

right of subrogation ... with respect to ... benefits paid or payable by a program, group contract or other arrangement," supports his position that the anti-subrogation provision applies. (Brief of Appellant at 11.) He asserts that the broad term "program, group contract or other arrangement" includes HMOs, as well as "every conceivable type of healthcare arrangement." *Id.* In support of this, he notes the following: (1) Aetna itself uses the words "program" and "group agreement" in the Certificate of Coverage (R.R. 26a) and Group Insurance Certificate (R.R. 97a) it issues to subscribers such as Wirth's father; (2) Section 1554(b) of the HMO Act, 40 P.S. § 1554(b), states that HMOs shall provide basic health care services either "directly or through arrangements" with others; (3) Section 1558 of the HMO Act, 40 P.S. § 1558, authorizes HMOs to enter into group contracts; and (4) 31 Pa.Code § 301.62 requires HMOs to file group and non-group contract forms with the Insurance Department. Based on these four factors, Wirth maintains that Section 1720 "specifically and in exact terms" applies to HMOs.

He further asserts that Section 1560(a) of the HMO Act does not exempt HMOs from the provisions of Section 1720 of the MVFRL because, "in common usage, the phrase 'program, group contract or other arrangement' is a specific and exact term that 'applies' to HMO plans." (Brief of Appellant at 15.) Because Aetna, the HMO Act, and the regulations use the words "program, group contract or other arrangement" to describe the HMO agreement in this case, Wirth argues that it is logical to conclude that Section 1720 of the MVFRL "specifically and in exact terms" applies to HMOs.

Aetna notes that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." Section 1903(a) of the Statutory Construction Act, 1 Pa.C.S. § 1903(a). "The common and approved usage of the words 'specifically' and 'exact' includes a shared requirement of particularity, which is antithetical to the generalized language of Section 1720." (Brief of Appellee at 8.) Accordingly, it asserts that the reference in Section 1720 to "benefits paid or payable by a program, group con-

tract or other arrangement" is not sufficiently particular to apply to HMO benefits. Aetna also contends that Wirth errs when he contends that the words "program" and "group contract," as used in Section 1720, refer to HMOs. Such terms are not specific and exact, because as Wirth states, they apply to "every conceivable type of healthcare arrangement." (Brief of Appellant at 11.)

Aetna suggests that the HMO exception demonstrates recognition by the General Assembly that there will be insurance laws that on their face arguably apply to HMOs, but from which HMOs are nevertheless exempt because such laws do not apply to them "specifically and in exact terms." 40 P.S. § 1560(a). Support for this position may be found in *DiGregorio v. Keystone Health Plan East*, 840 A.2d 361 (Pa.Super.2003). In *DiGregorio*, the appellant raised a bad faith claim against an HMO pursuant to Section 8371 of the Judicial Code, which provides:

Actions on Insurance Policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371. The Superior Court in *DiGregorio* held that Section 1560 of the HMO Act protects HMOs from statutory bad faith claims. As Aetna points out, the significant aspect of the decision is that the facially comprehensive language of Section 8371, which appears to include any insurer, was not sufficient to preclude application of the HMO exemption.

In contrast to Section 1720 of the MVFRL, it is instructive to note that in other statutes containing broad language referring to insurers, the General Assembly has "specifically and in exact terms" provided that the statutes apply to HMOs.

For example, in requiring that family coverage include adopted children, 40 P.S. § 775.1 states, in relevant part:

> (a) General Rule. This act shall apply to all group or individual health or sickness or accident policies, all group policies, all group or individual contracts or certificates issued by an entity subject to the ... Health Maintenance Organization Act....

Similarly, when discussing coverage pursuant to the Insurance Payment to Registered Nurse Law, 40 P.S. §§ 3021–3026, the General Assembly provided:

> (a) Coverage Enumerated. This act shall apply to every group policy, contract or certificate issued thereunder, of health, sickness or accident insurance delivered or issued for delivery within the Commonwealth, including, but not limited to policies, contracts or certificates issued by:
>
> . . .
>
> (5) Any voluntary nonprofit health service plan as defined in ... the Health Maintenance Organization Act.

40 P.S. § 3023(a).

With regard to reimbursement for licensed certified nurse midwife services, 40 P.S. § 3001 provides in relevant part:

> (a) The act shall apply to every group or individual policy, contract or certificate issued thereunder, of health or sickness, or accident insurance delivered or issued for delivery within this Commonwealth including but not limited to policies, contracts or certificates issued by:
>
> . . .
>
> (5) Any health maintenance organization as defined in ... the "Health Maintenance Organization Act."

When the General Assembly wishes to make insurance statutes applicable to HMOs, it does so by using the terms "health maintenance organization" or "HMO" or by specifically referring to the HMO Act.[3] Furthermore, when it intends

---

**3.** *See, e.g.,* 20 Pa.C.S. § 5411 (Advance Directive for Health Care Act) (providing that "no ... health maintenance organization ... shall"

to include HMOs within general terms such as "insurer" or "managed care plan," it does so "specifically and in exact terms."[4]

impose certain requirements with respect to advance directives); 20 Pa.C.S. § 54A08 (providing that "no health maintenance organization ... may" impose certain requirements with respect to do-not-resuscitate orders); 23 Pa.C.S. § 4326(*l*) (applying requirements relating to child medical support "to noninsurers providing health care coverage within this Commonwealth, including health maintenance organizations); 35 P.S. § 6215 (requiring coverage for individuals exposed to DES pursuant to policies "subject to," *inter alia*, the HMO Act); 40 P.S. § 764c (mandating coverage for mammographic examinations by "all group or individual subscriber contracts or certificates issues by any entity subject to," *inter alia*, the HMO Act); 40 P.S. § 764c(a) (mandating reimbursement for diabetic supplies by "group health insurance plans/policies, and all other forms of managed/capitated care plans/policies or subscriber contract or certificate issued by any entity subject to,") *inter alia*, the HMO Act; 40 P.S. §§ 3803, 3805–3808, 3810 and 3813 (Accident and Health Filing Reform Act) (applying provisions of the Act to "each insurer and HMO"); and 77 P.S. § 531(3)(v) (Workers Compensation Act) (referring to "coordinated care insurers, including those entities subject to the ... Health Maintenance Organization Act"). These examples all demonstrate that when the Legislature intends to include HMOs within general terms such as "insurer" or "managed care plan," it does so specifically and in exact terms.

**4.** *See, e.g.,* 40 P.S. § 991.1401 (insurance holding company provisions) ("The term ["insurer"] shall include health maintenance organizations as defined in the "Health Maintenance Organization Act"); 40 P.S. § 991.2102 (quality health care and accountability provisions) (defining "managed health care plan" as "health care arranged through an entity operating under," *inter alia*, the "Health Maintenance Organization Act"); 23 Pa.C.S. § 4304.1 (child support provisions) ("insurer" includes HMO); 35 P.S. § 5701.1302 (health investment insurance provisions of the Tobacco Settlement Act) ("insurer" includes HMO); 35 P.S. § 7603 (confidentiality of HIV-related information) ("insurer" includes entities doing business under the HMO Act); 40 P.S. § 221.1–B (risk-based capital requirements) ("health organization" includes HMO); 40 P.S. § 310.1 (insurance agent requirements) ("insurer" includes HMO); 40 P.S. § 313.2 (insurance department examination provisions) ("insurer" includes HMO); 40 P.S. § 445.2 (insurance company provisions) ("insurer" includes HMO); 40 P.S. § 764(d)(1)(ii) (mastectomy and breast cancer reconstruction) ("health insurance policy" includes a policy offered by or governed under the HMO Act); 40 P.S. § 746(g) (coverage for mental illness) ("health insurance policy" includes policy subject to the HMO Act); 40 P.S. § 981–2(a) (health care individual accessibility provisions) ("insurer" includes HMO); 40 P.S. § 991.1103 (long-term care provisions) ("policy" includes policy delivered or issued for delivery in Pennsylvania by HMO); 40 P.S. § 991.1201 (universal health insurance claim form provisions) ("insurer" includes entity subject to the HMO Act); 40 P.S. § 991.2303 (Children's Health Care

322

The General Assembly recognized that the anti-subrogation provisions of Section 1720 alone do not cover "every conceivable type of healthcare arrangement," as Wirth contends, absent additional language that overcomes the statutory exemptions for certain types of benefits. Similar to HMOs, hospital plan corporations and professional health care service corporations are exempt from insurance statutes that do not "specifically refer and apply" to them. *See* 40 Pa.C.S. § 6103(a) (hospital plan corporations), 40 Pa.C.S. § 6307 (professional health service corporations). Because of these exemptions, the General Assembly promulgated Section 1719(b) of the MVFRL, which Section 1720 incorporates by reference, to provide in relevant part:

(a) General rule.—except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any program, group contract or other arrangement for payment of benefits such as described in section 1711 (relating to required benefits) [,] 1721(1) and (2) (relating to availability of benefits) or 1715 (relating to availability of adequate limits) shall be in excess of and not in duplication of any valid and collectible first party benefits provided in section 1711, 1712 or 1715 or workers' compensation.

(b) Definition—As used in this section the term **"program, group contract other arrangement"** includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa.

Act) ("insurer" includes HMO); 40 P.S. § 1302.3 (Pennsylvania Health Care Insurance Portability Act) ("insurer" includes HMO); 40 P.S. § 1573 (Women's Preventative Health Services Act) ("health insurance policy" includes policy issued by an entity subject to HMO Act); 40 P.S. § 1582 (Health Security Act) ("health insurance policy" includes policy offered by or governed under HMO Act); 40 P.S. § 3041 (reimbursement for hospital emergency facility services) ("insurer" includes HMO); 40 · P.S. § 3502 (Childhood Immunization Insurance Act) ("health insurance policy" includes health service plan operating under HMO Act); 40 P.S. § 3903 (Medical Foods Insurance Coverage Act) ("health insurance policy" includes health service plan operating under HMO Act); 62 P.S. § 5001.103 (Children's Health Care Act) ("insurer" includes HMO); and 77 P.S. 1029.1 (insurance fraud provisions of Workers Compensation Act) ("insurer" includes HMO).

C.S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health service plan corporations). 75 Pa.C.S. § 1719(b) (emphasis in original). Although the definition of "program, group contract or other arrangement" in Section 1719 is not exclusive, it contains nothing specific or explicit with respect to HMOs, as contrasted with hospital plan corporations and professional health plan service corporations. This omission is significant because elsewhere the General Assembly has expressly included HMOs with hospital plan corporations and professional health service corporations in identifying the entities subject to various insurance laws. For example, the statute mandating coverage for mammographic examinations applies to, *inter alia:*

> All group or individual health or sickness or accident insurance policies providing hospital or medical/surgical coverage and all group or individual subscriber contracts or certificates issued by any entity subject to 40 Pa.C.S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health service plan corporations), this act, [or] the act of December 29, 1972 (P.L. 1701, No. 364), known as the "Health Maintenance Organization Act."

40 P.S. § 764c. *See also,* 40 P.S. § 310.1 (Insurance Department licensing provisions) (defining "insurer" to include, *inter alia,* a "health maintenance organization ... professional health services plan corporation subject to 40 Pa.C.S. Ch. 63 (relating to professional health services plan corporations), [and] a hospital plan corporation subject to 40 Pa.C.S. Ch. 61 (relating to hospital plan corporations)." In light of the fact that Section 1719(b) was promulgated to reach classes of benefits that would otherwise be exempt from the anti-subrogation provisions of Section 1720, the absence from Section 1719(b) of anything that "specifically and in exact terms" applies to HMOs is controlling.

Section 1560 of the HMO Act provides that HMOs are not subject to any insurance law "unless such law specifically and in exact terms applies to such health maintenance organizations." Section 1720 of the MVFRL provides that "there shall be no right of subrogation or reimbursement from a claimant's

tort recovery with respect to ... benefits paid or payable by a program, group contract or other arrangement whether primary or excess...." The General Assembly did not "specifically and in exact terms" state that the anti-subrogation provision applies to HMOs. Accordingly, application of the rule of statutory construction that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," 1 Pa.C.S. § 1903(a), leads us to conclude that Section 1720 does not apply to HMOs.

### Irreconcilable Conflict

The General Assembly enacted the HMO Act in 1972 and the MVFRL in 1984. Wirth asserts that to the extent that the HMO Act and the MVFRL are in conflict, the anti-subrogation provision of the MVFRL should control over the earlier adopted HMO Act. Section 1936 of the Statutory Construction Act, 1 Pa.C.S. § 1936, provides that whenever statutes enacted by different General Assemblies are irreconcilable, the latest enactment prevails. However, the position of Wirth directly conflicts with the intent of the General Assembly as set forth in Section 1560(a), which provides that an HMO is exempt from laws **"hereafter enacted** relating to the business of insurance unless such law specifically and in exact terms applies to such health maintenance organization." (emphasis added). Thus, it is clear that in this instance the Legislature intended that statutes promulgated after 1972 would not apply to HMOs unless they so provided in specific and exact terms.

Accordingly, we reject Wirth's suggestion that the MVFRL trumps application of Section 1560(a) of the HMO Act.

### Public Policy

Wirth asserts that prohibiting subrogation furthers the goals of the MVFRL of reducing the cost of automobile insurance and providing complete compensation for individuals injured in motor vehicle accidents. *Burstein v. Prudential,* 570 Pa. 177, 809 A.2d 204, 208 (2002). He opines that if an HMO is not subject to the anti-subrogation provision of Section 1720, the result will be that in future cases courts may

permit injured plaintiffs who are covered by HMOs to plead, prove, and recover their medical expenses from tortfeasors. This, he contends, would conflict with the cost-reduction goals of the MVFRL by increasing the damages for which automobile insurers will be held accountable, thus frustrating the public interest in lower car insurance. (Brief of Appellant at 19.)

Aetna counters that this Court should not engage in a public policy analysis, but that were we to do so, we should consider the purpose of the HMO Act, which is "to advance the purposes of quality assurance, cost-effectiveness and access" to affordable health care. 40 P.S. § 1552. It asserts that there is no basis to conclude that "in enacting the MVFRL, the General Assembly intended to reduce automobile insurance costs at the expense of increasing health care costs by denying HMOs their preexisting subrogation rights." (Brief of Appellee at 18.)

As we explained in *Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc.,* 577 Pa. 14, 842 A.2d 334, 338 (2004):

> The balancing of such "policy concerns" is the essence of the legislative process. Absent ambiguity or constitutional infirmity, it is not the place of this Court ... to substitute its own balancing of equities in order to determine what ... is most "fair." (citations omitted).

Because Section 1560(a) of the HMO Act is clearly worded and free of ambiguity, and Section 1702 of the MVFRL does not "specifically and in exact terms" apply to HMOs, we decline Wirth's invitation to consider legislative intent. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act, 1 Pa.C.S. § 1921(b).

### Conclusion

For these reasons, we hold that an HMO is exempt from complying with the anti-subrogation provision of the MVFRL.

Chief Justice CAPPY and Justice SAYLOR, EAKIN and BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this case.

Justice CASTILLE dissents.