939 A.2d 843

**Gary E. WIMER, Appellee,**

v.

**PENNSYLVANIA EMPLOYEES BENEFIT TRUST FUND (PEBTF), Appellant.**

Supreme Court of Pennsylvania.

Argued March 5, 2007.

Decided Dec. 27, 2007.

Richard Kirschner, Esq., for Pennsylvania Employees Benefit Trust Fund (PEBTF).

Cynthia M. Danel, Esq., Edgar Snyder & Associates, L.L.C, Pittsburgh, for Gary E. Wimer.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice BAER.

We granted review in this healthcare subrogation case to address the following issues. First, whether a recipient of healthcare benefits paid by the Pennsylvania Employees Benefit Trust Fund (hereinafter "PEBTF" or "Appellant") is contractually obligated, when challenging a subrogation claim and a termination of healthcare benefits, to exhaust internal appeals to PEBTF's Board of Trustees prior to seeking recourse through filing an action for declaratory judgment with a court. Second, whether PEBTF's right to subrogation against a healthcare recipient's recovery from a third party tortfeasor accrues as of the date of the recipient's injury, or on the date when PEBTF reimburses the healthcare recipient's medical expenses. As will be discussed, if PEBTF's right to subrogation accrued on the date of the injury, PEBTF would be entitled to subrogate over $35,000 in benefits it paid after January 1, 1998, when, as explained fully below, it ceased operating as an ERISA qualified plan. If, however, the right to subrogate accrued after it paid the healthcare recipient's medical benefits, PEBTF could only subrogate the $186 it paid when it was an ERISA qualified plan. For the following reasons, we conclude that a recipient of healthcare benefits paid by PEBTF need not exhaust internal administrative remedies prior to filing suit, and that PEBTF's right to subrogation only arises once PEBTF has paid the recipient's medical benefits. Accordingly, we affirm the decision of the Superior Court.

■ The facts of this case are undisputed. Appellee Gary E. Wimer was employed by the Commonwealth of Pennsylvania as a corrections officer at SCI Camp Hill, and his healthcare benefits were provided by PEBTF. On October 3, 1997, Appellee was injured when a vehicle operated by Willie Taylor and owned by the J.F. Cartage Company ("the third parties")

collided with Appellee's automobile. On the date of the accident, PEBTF was a self-funded "employee welfare benefit plan" under the Employees Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, which entitled it to exercise subrogation rights notwithstanding the anti-subrogation provision of the Pennsylvania Motor Vehicle Responsibility Law (MVFRL), 75 Pa.C.S. § 1720.[1,2] *See FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (holding that, for ERISA qualified plans, ERISA preempted application of the anti-subrogation provision of the MVFRL). As detailed below, the anti-subrogation provision of the MVFRL precludes governmental healthcare plans (non-ERISA qualified plans) from exercising subrogation rights against a healthcare recipient's tort recovery. 75 Pa.C.S. § 1720; *Wirth v. Aetna U.S. Healthcare*, 588 Pa. 313, 904 A.2d 858, 864–65 (2006).

Following the accident, Appellee initially submitted his medical bills to his automobile insurance carrier, Erie Insurance

1. For ease of discussion, we will refer to an "employee welfare benefit plan" as an "ERISA qualified plan." Plans that are not ERISA qualified will be referred to as "governmental plans" or "governmental healthcare plans." *See* 29 U.S.C. §§ 1002(32), 1003(b)(1) (providing that the provisions of ERISA are inapplicable to governmental plans, which include plans established for state or federal government employees).

Our docket sheet reflects that this Court entered an order dated June 17, 2005, holding disposition of this case pending our decision in *Scalice v. Pennsylvania Employees Benefit Trust Fund*, 584 Pa. 161, 883 A.2d 429 (2005), where this Court determined that PEBTF was not entitled to summary judgment on the question of whether it had been an ERISA qualified plan in 1997. This is not the issue currently before us, as the parties in this case stipulated that PEBTF was, in fact, an ERISA qualified plan until January 1, 1998. Joint Stipulation of Fact at 2.

2. 75 Pa.C.S. § 1720 states:
In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits).

Company, which paid for Appellee's medical expenses until the policy's $10,000 limit was exhausted. Thereafter, Appellee's medical bills were submitted to PEBTF for payment. In total, PEBTF paid $186.00 on behalf of Appellee through the end of 1997.

On January 1, 1998, PEBTF's status changed from an ERISA qualified plan to a governmental plan, and, as such, it became subject to the anti-subrogation provision of the MVFRL. Shortly thereafter, Appellee filed a liability action against the third parties and, the following year, secured a settlement for an undisclosed sum. Upon learning of this settlement, PEBTF filed a subrogation claim against Appellee for $35,815.90, which represented the total benefits it had paid on Appellee's behalf since January 1, 1998.[3] However, Appellee refused to pay PEBTF on grounds that it was no longer entitled to seek subrogation. PEBTF then terminated Appellee's benefits pursuant to a provision in PEBTF's governing documents entitling it to terminate coverage if a healthcare recipient refuses to cooperate in the exercise of PEBTF's subrogation rights.

Appellee subsequently filed a Complaint for Declaratory Judgment against PEBTF in the Court of Common Pleas of Westmoreland County, and requested that the court enter an order providing that any subrogation rights be limited to the $186 paid by PEBTF prior to January 1, 1998, when it was an ERISA qualified plan. Appellee also requested that the court order PEBTF to reinstate his benefits, reimburse him for medical expenses incurred subsequent to the termination of his benefits, and direct PEBTF to pay costs and counsel fees.

In response, PEBTF filed preliminary objections and a petition to transfer the action to Dauphin County. In its preliminary objections, PEBTF asserted that Appellee failed to exhaust his internal administrative remedies before com-

3. It appears PEBTF only sought to recover the funds paid after January 1, 1998, when PEBTF was no longer an ERISA qualified plan. Nevertheless, Appellee concedes that PEBTF is entitled to recover the money paid in 1997 and, in fact, he was ordered to pay $186 to PEBTF. *See* Tr. Ct. Op., 9/10/02, at 3, 12.

mencing the instant litigation, and that Appellee failed to state a valid cause of action. In support of the former claim, PEBTF alleged that Appellee was contractually obligated under the Summary Plan Description and the Plan Document (collectively, "the plan documents"), which applied to his coverage, to appeal to PEBTF's Board of Trustees as a prerequisite to filing the instant declaratory judgment action.[4] In furtherance of the latter claim, PEBTF asserted that Appellee failed to state a valid cause of action because, in its view, its right to subrogation accrued on the date of the accident, when it was still an ERISA qualified plan permitted to seek subrogation, and not on the dates it paid Appellee's benefits, when it was a governmental plan subject to the MVFRL's anti-subrogation provision.

Following a hearing, the trial court issued an opinion and order dismissing PEBTF's preliminary objections and its petition to transfer venue, and directed that PEBTF file a responsive pleading to Appellee's complaint within twenty days. Accordingly, PEBTF filed an answer and, after Appellee filed his reply, PEBTF filed a Motion for Judgment on the Pleadings and/or Summary Judgment, raising the identical issues and arguments it had raised in its preliminary objections. In response, Appellee filed an answer to this motion and a cross-motion for summary judgment.

On September 10, 2002, the trial court issued a second opinion and order denying PEBTF's motion for summary judgment and granting Appellee's cross-motion for summary judgment.[5] In addressing PEBTF's argument that Appellee failed to exhaust his internal remedies, the court observed that

4. The plan documents describe the rights and obligations of PEBTF healthcare recipients. PEBTF cites to these documents to support its argument that Appellee was required to pursue internal appeals to the Board of Trustees as a precondition to filing a declaratory judgment action. As detailed below, however, these provisions do not require a recipient to appeal to the Board of Trustees, but merely grant them the right to such a remedy. The relevant provisions cited by PEBTF are reproduced *infra* at 8.

5. The court further ordered PEBTF to reinstate Appellee's benefits and to reimburse him for medical expenses, but declined to award counsel fees and costs.

PEBTF was relying on provisions of the plan documents which grant healthcare recipients a right to appeal to the Board of Trustees where their eligibility or claim for benefits have been denied. However, the court found these provisions inapplicable because the decision to terminate Appellee's benefits in this case was not premised upon his eligibility or on the denial of a claim for benefits, but was based instead on his refusal to reimburse PEBTF.

The trial court then turned to PEBTF's claim that its subrogation rights accrued on the date of Appellee's injury rather than on the date of payment. In this regard, the trial court, adopting the analysis it had used in denying PEBTF's preliminary objections, noted that subrogation presupposes an actual payment by the party seeking to be subrogated. *See Hagans v. Constitution State Serv. Co.,* 455 Pa.Super. 231, 687 A.2d 1145, 1149 (1997) ("subrogation presupposes an actual payment and satisfaction of a debt or claim by the entity asking to be subrogated"). Thus, according to the trial court, PEBTF's right to subrogate to recover the $35,815.90 did not accrue until PEBTF actually paid Appellee's medical benefits after January 1, 1998. Because this date was after PEBTF had relinquished its status as an ERISA qualified plan, the trial court concluded that PEBTF was subject to Section 1720 of the MVFRL and therefore not entitled to subrogate.

An *en banc* panel of the Superior Court affirmed in a published decision.[6] *Wimer v. Pa. Employees Benefit Trust Fund (PEBTF),* 868 A.2d 8 (2005). In its opinion, the court agreed with the trial court that the provisions of the plan documents relied upon by PEBTF were inapplicable and did not support its argument that Appellee was required to appeal his claim internally before commencing this action. The court observed that these provisions, by granting healthcare recipi-

6. Judge Klein joined the majority and filed a concurring statement in which Judge Stevens joined. In his concurring statement, Judge Klein agreed with the majority but wrote separately only to note that there has never been a definitive ruling confirming whether PEBTF was ever an ERISA qualified plan. However, because the parties in this case had stipulated that PEBTF was ERISA qualified prior to January 1, 1998, Judge Klein believed the majority's analysis was correct.

ents the "right" to appeal to the Board of Trustees, did not contain any mandatory language that would have affirmatively required Appellee to pursue such a remedy.

The Superior Court next considered whether PEBTF was entitled to subrogation for the payments it made after its change in status on January 1, 1998, and noted that subrogation is an equitable doctrine that presumes the party seeking subrogation has actually made a payment in satisfaction of a debt or obligation to the subrogor. *See, e.g., Daley–Sand v. West Am. Ins. Co.*, 387 Pa.Super. 630, 564 A.2d 965, 969–70 (1989); *Hagans*, 687 A.2d at 1149. In light of this principle, the court agreed with the trial court that PEBTF's right to subrogation could not have accrued until after it had paid Appellee's medical bills, which, as relevant here, followed PEBTF's change in status to a governmental plan. The court also distinguished this Court's opinion in support of affirmance in *Gokalp v. Pennsylvania Manufacturers' Ass'n Insurance Co.*, 553 Pa. 452, 719 A.2d 1033 (1998), and the Commonwealth Court in *DePaul Concrete v. Workers' Compensation Appeal Board (White)*, 734 A.2d 481 (Pa.Cmwlth.1999), relied upon by PEBTF, which stated generally that a subrogation claim must be determined under the law as it existed at the time a cause of action arises.[7] Therefore, the court concluded that PEBTF, as a matter of law, was precluded from exercising its subrogation rights under the MVFRL.

PEBTF subsequently filed a petition for allowance of appeal with this Court, which we granted, limited to the following questions:

> Did the Superior Court err as a matter of law when it concluded that Appellee Gary E. Wimer [ ] was not required

---

**7.** As will be discussed in detail below, the Superior Court did not analyze its then-contrary holding in *Scalice v. Pennsylvania Employees Benefit Trust Fund*, 854 A.2d 987 (Pa.Super.2004), *rev'd* 584 Pa. 161, 883 A.2d 429 (2005), which held that a right of subrogation accrues on the date of the injury. This Court reversed the Superior Court in *Scalice* on different grounds, when we concluded that PEBTF was not entitled to summary judgment on the question of whether it was an ERISA qualified plan in 1997. Consequently, we never resolved the associated issue regarding when a right to subrogation accrues, which we take up here.

to exhaust his contractual remedies under the PEBTF's governing plan documents?

Did the Superior Court err as a matter of law when it concluded that the PEBTF's right to subrogation is determined as of the date when it reimbursed [Appellee's] medical expenses and therefore concluded that the PEBTF should be denied the right of subrogation for any medical payments made on [Appellee's] behalf after January 1, 1998?

*Wimer v. Pa. Employees Benefit Trust Fund (PEBTF)*, 589 Pa. 254, 908 A.2d 268 (2006) *(per curiam )*.

■ As to the first issue, PEBTF contends that the Superior Court misinterpreted the plan documents when it held that they did not contain any mandatory language that would require healthcare recipients to exhaust their internal remedies prior to commencing litigation in a court. PEBTF asserts that, after it terminated Appellee's coverage, Appellee was contractually obligated by the plan documents to file an appeal of the termination decision to PEBTF's Board of Trustees. In support of its position, PEBTF relies on the eligibility provision in the Summary Plan Description, which provides:

If Eligibility is Denied

The Board of Trustees has established the eligibility rules. If eligibility for you or one of your dependent(s) is denied, you have the right to appeal to the Board of Trustees. Your written appeal must be received by the PEBTF within 30 days of the denial. A failure to appeal within this 30 day period will result in an automatic denial of your appeal. (emphasis omitted)

\* \* \*

Summary Plan Description at 6. PEBTF also cites to provisions of the plan documents that grant healthcare recipients the right to appeal to the PEBTF Board of Trustees. These provisions provide, in relevant part:

Basic Option Appeal Process

(Blue Cross, Blue Shield or PEBTF Major Medical)

If a claim for benefits is denied in full or in part, you will be notified of the denial in writing on your Explanation of Benefits (EOB) and you will have an opportunity to appeal the denial. The EOB will state the specific reason(s) for the denial ... and an explanation of the procedure to appeal the denial.

\* \* \*

Trustee Appeal

If you are not satisfied with the review of the claims payor—Blue Cross, Blue Shield, or the PEBTF (for major medical claims)—you have the right to appeal to the Trustees. The appeal to the Trustees must be received in writing within 30 days of the date of the final denial from the claims payor.

The Trustees will review your appeal and will notify you of their decision within 60 days of the date the appeal is received ... All decisions rendered by the Board of Trustees on appeal are considered final. (emphasis omitted)

Summary Plan Description at 24–25. PEBTF claims that these provisions make clear that healthcare recipients cannot bypass their appeal rights to the Board of Trustees without endangering their claims for eligibility or entitlement to reimbursement. In this regard, PEBTF alleges that the use of the word "must" throughout these provisions, coupled with language providing that a healthcare recipient's failure to file a timely appeal results "in an automatic denial" of his or her appeal, *see* Summary Plan Description at 6, evince a mandatory obligation on the part of healthcare recipients to exhaust their internal remedies before they can seek relief through litigation.

With little elaboration, PEBTF also relies upon various federal decisions holding that healthcare recipients who seek to enforce their right under an ERISA qualified plan must exhaust the available remedies under the plan documents before filing suit. *See, e.g., Berger v. Edgewater Steel Co.,* 911

F.2d 911, 916 (3rd Cir.1990) (stating that, with few exceptions, the requirement to exhaust administrative remedies under ERISA is strictly enforced); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3rd Cir.1990) (same). PEBTF claims that, given the similarity between ERISA qualified plans and governmental plans such as PEBTF, an exhaustion requirement should be equally applicable in the instant matter. Finally, PEBTF notes that an internal exhaustion requirement would conserve judicial resources and ensure that decisions are reviewed by the plan's trustees.

In contrast, Appellee responds that the Superior Court correctly determined that the provisions of the plan documents cited by PEBTF are not phrased in mandatory terms, but merely provide healthcare recipients with "the right" to appeal to the Board of Trustees. Notwithstanding this interpretation, however, Appellee asserts in the alternative that these provisions are nevertheless inapplicable because they apply to situations where a healthcare recipient's specific claims for benefits have been denied, and not where, as here, there has been a complete termination of coverage.

■■ At the outset, we note the principle that a court shall enter summary judgment whenever there is no genuine issue of any material fact. Pa.R.C.P. 1035.2(1). An appellate court may disturb a decision granting or denying summary judgment pursuant to Pa.R.C.P. 1035.1–1035.5 only if it determines that the trial court committed an error of law or abused its discretion. *Farabaugh v. Pa. Tpk. Comm'n,* 590 Pa. 46, 911 A.2d 1264, 1267 (2006). In considering the merits of a summary judgment motion, a court must view the evidence of record in the light most favorable to the non-moving party, and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.*

■ With this standard in mind, this Court must now determine whether the Superior Court erred in affirming the trial court's conclusion that the language contained in the plan documents did not require Appellee to exhaust internal administrative remedies by appealing to PEBTF's Board of Trus-

640

■■■■■■■■■■

tees. Because this issue involves a question of law, our scope of review is plenary and our standard of review is *de novo*. *Alliance Home of Carlisle v. Bd. of Assessment Appeals*, 591 Pa. 436, 919 A.2d 206, 214 (2007).

As noted above, the plan documents afford healthcare recipients "the right to appeal" to PEBTF's Board of Trustees in certain contexts where their eligibility for benefits have been denied, or where there has been an adverse ruling regarding a claim for benefits. *See* Summary Plan Description at 6, 24–25. Thus, under this plain language, and assuming that these provisions even apply where, as here, there has been a complete termination of healthcare benefits, recipients are clearly entitled to pursue their claim with the Board of Trustees, but this language does not impose an affirmative obligation for them to pursue such remedies as a prerequisite to commencing litigation.

■ PEBTF would nevertheless have us read into this language an *internal exhaustion of remedies requirement* based on its claim that PEBTF was created using the same general principles as ERISA, which contains such a requirement. However, PEBTF provides no authority indicating that the plan was based on the same principles as ERISA, and concedes that it was not originally created as an ERISA qualified plan and does not currently operate as one. PEBTF's Brief at 14. Furthermore, PEBTF fails to recognize that ERISA's exhaustion requirement is itself a judicially-created, rather than a statutorily-imposed, mandate, that is itself subject to the discretion of the reviewing court. *See, e.g., Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir.1998) (stating that the "application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the district court"); *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir.2007) ("as a judicially-crafted doctrine, exhaustion places no limits on a court's adjudicatory power ... [j]udicial prudence, not power, governs its application in a given case."). In light of the foregoing, we decline PEBTF's invitation to read into the plain language of the plan documents a mandatory prerequisite that healthcare

recipients exhaust their administrative remedies prior to seeking relief in a court.[8]

We next turn to PEBTF's argument that its rights to subrogation accrued on the date of Appellee's accident, rather than on the date it paid Appellee's medical benefits. In support of this position, PEBTF asserts that the Superior Court's decision in the case *sub judice* ignores that court's then-contradictory decision in *Scalice v. Pennsylvania Employees Benefit Trust Fund*, 854 A.2d 987 (Pa.Super.2004), *rev'd* 584 Pa. 161, 883 A.2d 429 (2005), where it concluded that a right of subrogation accrues on the date of the accident, as opposed to the date of payment.[9] Although PEBTF acknowledges that we subsequently reversed that decision on other grounds, it claims that the same rationale underlying the Superior Court's analysis in *Scalice* pertaining to the issue before us is equally applicable here.

In *Scalice*, the plaintiff was a Commonwealth employee who was injured in an automobile accident while PEBTF was an ERISA qualified plan and, hence, entitled to subrogation. *Scalice*, 854 A.2d at 988. PEBTF paid the plaintiff's medical benefits—some of which were paid after it had changed its status from an ERISA qualified plan to a governmental plan. *Id.* The plaintiff then secured a settlement against a third-party tortfeasor, after which PEBTF asserted a subrogation claim for the benefits it had paid. The plaintiff refused to pay PEBTF and filed a complaint for declaratory judgment, alleging that PEBTF was precluded from subrogating because it

8. Because we conclude that the provisions of the plan documents relied upon by PEBTF do not contain a mandatory internal appeal requirement, we need not address whether these provisions are applicable in the context of termination proceedings.

9. As noted earlier, this Court reversed the Superior Court's decision in *Scalice* on the threshold question of whether PEBTF was entitled to summary judgment on the issue of whether it had been an ERISA qualified plan in 1997. *Scalice*, 883 A.2d at 435–36. Because we concluded the PEBTF was not entitled to summary judgment, we reversed the decision of the Superior Court and remanded for further findings on PEBTF's status. Consequently, we never resolved the associated issue concerning when a right to subrogation accrues.

was no longer ERISA qualified. *Id.* Ultimately, the trial court denied the plaintiff relief and an appeal followed.

In affirming the trial court, the Superior Court in *Scalice* expressed concern that if the date of payment controlled when subrogation rights accrued, it would lead to unpredictability because neither the healthcare recipient nor PEBTF can control when a medical provider sends a bill to PEBTF for payment. *Scalice,* 854 A.2d at 991–92. For example, the court noted that a physician could wait months before sending a bill to PEBTF and, in the interim, PEBTF's status could change from a governmental plan to an ERISA qualified plan, or *vice versa. Id.* The court also noted that PEBTF could manipulate when it paid benefits by waiting until its status changed back to an ERISA plan, thereby entitling it to subrogation. The court reasoned that, as a matter of policy, fixing subrogation rights at the time of the accident, in contrast, avoided these problems by providing a neutral point of reference that clearly defined the parties' rights. *Id.*

PEBTF also relies on the opinion in support of affirmance in *Gokalp* and the Commonwealth Court's decision in *DePaul Concrete,* for the proposition that subrogation rights must be determined under the law that existed when the injury occurred. In both cases, workers' compensation claimants were injured when Section 1720 of the MVFRL precluded an employer's workers' compensation carrier from exercising subrogation rights against a claimant's recovery in a third-party tort action. *Gokalp,* 719 A.2d at 1033–36; *DePaul Concrete,* 734 A.2d at 482. Subsequently, Section 1720 was amended such that workers' compensation carriers were no longer precluded from seeking subrogation. The issue in each case was whether the amendment applied retroactively to the date of the claimants' injuries to enable the employer's carrier to subrogate. In *Gokalp,* this Court being evenly divided, affirmed the Superior Court, which had held that the law in effect at the time of the injury applied and therefore, the carrier was not permitted to subrogate under the amendment. *Gokalp,* 719 A.2d at 1033–36. Similarly, in *DePaul Concrete,* the Commonwealth Court concluded that, because Section

1720 affected substantive rights, the law in effect at the time of the injury controlled. *DePaul Concrete*, 734 A.2d at 484–87.

Finally, PEBTF questions the Superior Court's reliance on *Daley–Sand* and *Hagans* for the proposition that subrogation presupposes payment by the subrogee to the subrogor. According to PEBTF, both of these cases are distinguishable because they address different issues. In this regard, PEBTF points out that the main issue in *Daley–Sand* was whether an insurer may withhold consent for the insured to settle with an underinsured tortfeasor under the MVFRL. *See generally Daley–Sand*, 564 A.2d at 967–72. Similarly, PEBTF notes that *Hagans* addressed whether a plaintiff is required to sue all potential tortfeasors involved in a motor vehicle accident before qualifying to receive benefits under an assigned claim plan. *See generally Hagans*, 687 A.2d at 1147–50. PEBTF concludes that, because neither case addressed the relevant question regarding how a party's subrogation rights are determined when the facts or law changes over a given period of time, they are not relevant to the instant matter.[10]

In contrast, Appellee argues that PEBTF's reliance on *Scalice, Gokalp* and *DePaul Concrete* is misplaced. Regarding *Scalice*, Appellee argues that the main issue in that case was not when subrogation rights accrue, but whether PEBTF was ever an ERISA qualified plan at the time of the plaintiff's injury. Similarly, Appellee contends that *Gokalp* and *DePaul Concrete* are distinguishable because they addressed whether a statutory amendment, that impacted a workers' compensation carrier's substantive right to subrogation, could apply retroactively, and not when subrogation rights arise where there has been a change in the subrogee's legal status. *See generally Gokalp*, 719 A.2d at 1033–36; *DePaul Concrete*, 734 A.2d at 482.

10. In its brief, PEBTF suggests in passing that, if we conclude that PEBTF is not entitled to subrogate, Appellee will be recovering twice for the same cause of action. We do not pay much credence to this concern, however, in that the legislature, in enacting the anti-subrogation provision of the MVFRL, 75 Pa.C.S. § 1720, specifically permits such a result.

644

Finally, Appellee asserts that the principle espoused in *Daley-Sand* and *Hagans*—that subrogation presupposes payment by the subrogee to the subrogor—is one that has long been recognized under Pennsylvania case law. *See, e.g., Bryan v. Home Ins. Co. of N.Y.*, 124 Pa.Super. 85, 187 A. 924 (1936) (stating that the doctrine of subrogation requires that the person seeking its benefit, i.e., the subrogee, have paid a debt before he can be substituted to the subrogor's rights). As a result, Appellee concludes that both the trial and Superior courts, relying on *Daley-Sand* and *Hagans*, properly found that PEBTF's right to subrogation did not arise until it paid Appellee's benefits in 1998, when it was no longer an ERISA qualified plan.

 Upon consideration of the foregoing arguments and the relevant case law, we agree that a subrogee must first tender payment to the subrogor in satisfaction of a debt before a right to subrogation accrues. In making this determination, we note by way of background that the doctrine of subrogation is based on principles of equity and is enforced to bring about substantial justice. *Employers Ins. of Wausau v. Commonwealth, Dep't of Transp.*, 581 Pa. 381, 865 A.2d 825, 831–32 (2005). Subrogation is designed to place the ultimate burden of a debt on the party who in good conscience should pay it, and, as such, is generally applicable when one party pays out of his own funds a debt that is primarily payable from the funds of another. *Id.* at 833; *see also Paxton Nat'l Ins. Co. v. Brickajlik*, 513 Pa. 627, 522 A.2d 531, 532 (1987) ("Subrogation is the equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities which the creditor may hold against the principal debtor, and by the use of which the party paying may thus be made whole.' "), *citing Appeal of Forest Oil Co.*, 118 Pa. 138, 12 A. 442, 443 (1888). We also note that the rights to which the subrogee succeeds are the same as, and can be no greater than those of the person for whom he is substituted. *Pa. Mfrs.' Ass'n Ins. Co. v. Wolfe*, 534 Pa. 68, 626 A.2d 522, 525 (1993).

With these considerations in mind, we turn to the principle, noted in *Daley–Sand* and *Hagans,* that subrogation presupposes a payment by the subrogee to the subrogor. In this regard, we observe that this notion is not a recent innovation, but one that has long existed in this Court's jurisprudence. In *Insurance Co. of North America v. Fidelity Title & Trust Co.,* 123 Pa. 523, 16 A. 791, 792 (1889), this Court addressed the doctrine of subrogation and noted that a right to subrogate cannot arise until there has been an actual payment by the subrogee in satisfaction of a debt or obligation to the subrogor. Specifically, in this ancient case, we stated:

> [I]t must be remembered that the right to subrogation or substitution ... must depend on equitable principles applicable to the relations which these parties sustain to each other. If it be conceded that the insurer stands in the position of a surety for loss sustained by reason of the wrongful acts of others, and has a right to the remedies which the insured might employ against them, after it has discharged its liability under its policy, still it has no reason for demanding substitution in advance. It is not a liability to pay, but an actual payment to the creditor, which raises the equitable right to be subrogated to his remedies.... A demand made by the surety for subrogation before he has discharged the liability out of which it grows, is without anything to support it, and the creditor may properly refuse it without affecting thereby his right of action against the surety.

*Id.* (internal citations omitted). Similarly, in *Brownsville Second National Bank v. London and Lancashire Insurance Co.,* 298 Pa. 53, 148 A. 35, 36 (1929), this Court noted that "the doctrine of subrogation requires that the person seeking its benefit must have paid a debt due to a third person before he can be substituted to that person's rights; and that it is not a liability to pay but an actual payment to the creditor which raises the equitable right to subrogation." *See also Roberts v. Fireman's Ins. Co. of Newark, N.J.,* 376 Pa. 99, 101 A.2d 747, 749 (1954) ("it is well settled that as a prerequisite to the enforcement of a right of subrogation, the subrogee must have

paid or, at least, have offered to pay in discharge of the subrogor's claim.").

This well-established legal precedent is in accord with the equitable purposes that underlie the doctrine of subrogation. As noted above, subrogation is designed to enable a party that is secondarily liable, i.e., the subrogee, but who has paid the debt of the subrogor, to be made whole by allowing the subrogee to succeed to the benefit of any rights and securities that may be due to the subrogor by the party who is primarily liable. *See Paxton Nat'l Ins. Co.,* 522 A.2d at 532. It would be inconsistent with the notion of substantial justice that underlies subrogation to hold that a subrogee such as PEBTF can succeed to the rights of a subrogor such as Appellee prior to having actually paid Appellee's medical expenses. Accordingly, we reject PEBTF's contention that a right to subrogation can accrue prior to actual payment by the subrogee in satisfaction of its obligation to the subrogor, and conclude that the Superior Court was not in error in relying on *Daley–Sand* and *Hagans* in its analysis.[11]

The Superior Court in *Scalice* suggested that if PEBTF's right to subrogate does not arise until it makes a payment to a healthcare recipient, PEBTF could potentially delay the payment of medical benefits, or a healthcare provider could delay when it bills PEBTF for payment, until PEBTF has been reclassified as an ERISA qualified plan and thus entitled to subrogate. *See, e.g., Scalice,* 854 A.2d at 991–92. We do not find this argument persuasive, however, in that the doctrine of subrogation is ultimately based in equity and, as such, concerns about inappropriate manipulation by a party, or the unreasonably late receipt of a bill from a healthcare provider,

11. Having concluded that a right to subrogate cannot arise before the subrogee pays a debt owed to the subrogor, it remains an open question whether PEBTF's right to subrogate is in fact perfected on the date it pays Appellee's benefits, or on the date when Appellee has actually received the proceeds from the third parties. We note that, in the context of workers' compensation, this Court stated in *Wolfe,* 626 A.2d at 525, that a "worker's compensation carrier is not entitled to any subrogation until the injured employee has the 'right' to and *receives* such compensation." (emphasis added).

could be challenged and addressed through any number of available equitable remedies.

Finally, we also find distinguishable the opinion in support of affirmance in *Gokalp* and the Commonwealth Court's decision in *DePaul Concrete,* which PEBTF relies upon as support for its position that subrogation rights are determined on the date of the accident. As mentioned in the discussion above, these cases address a statutory amendment to Section 1720 of the MVFRL which altered an employer's workers' compensation carrier's right to seek subrogation. *Gokalp,* 719 A.2d at 1033–36; *DePaul Concrete,* 734 A.2d at 482. In holding that the law in effect at the time of the injury controlled, both cases merely reiterated the general principle that subsequent legislation cannot retroactively affect a party's substantive rights. In contrast, the instant case does not implicate a change in legislation, but addresses instead when a subrogation right accrues where there has been a change in the legal status of one of the parties over a period of time. PEBTF's reliance on these cases is therefore misplaced.

In light of our conclusion that a subrogee must first tender payment to the subrogor before a right to subrogation can accrue, we hold that, as a matter of law, PEBTF's subrogation rights could not have arisen until it satisfied its obligation to Appellee by paying his medical benefits. Because the relevant payments in the instant matter were made following PEBTF's change in status from an ERISA qualified plan to a governmental plan, the anti-subrogation provision of the MVFRL, 75 Pa.C.S. § 1720 applies and, therefore, precludes PEBTF from subrogating against Appellee's third party settlement. Accordingly, we affirm the decision of the Superior Court.

Chief Justice CAPPY, and Justice CASTILLE, SAYLOR and EAKIN and Justice BALDWIN join the opinion.