## Audrey ROSS

v.

## POLICEMEN'S RELIEF AND PENSION FUND OF THE CITY OF PITTSBURGH, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 2005.

Decided Feb. 25, 2005.

Reargument Denied April 27, 2005.

---

Norma Chase, Pittsburgh, for appellant.

Jonathan G. Babyak, Pittsburgh, for appellee.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

The Policemen's Relief and Pension Fund of the City of Pittsburgh (Fund) appeals from two orders of the Court of Common Pleas of Allegheny County (trial court) that require the Fund to pay surviving spouse benefits to Audrey Ross (Ross). We affirm the trial court.

Ross and Gregory William Adams (Adams) cohabited for approximately 11 years. Adams, a beneficiary of the Fund, died on June 19, 2001. When Ross applied to the Fund for surviving spouse benefits she was told that she would have to prove to the Fund that she and Adams were married. Ross subsequently secured an order from the Orphans' Court Division of the trial court declaring that a common law marriage [1] had existed between herself and Adams. The order, dated August 23, 2002, was issued after a full evidentiary hearing in which the issuance of the order was opposed by Adams' daughters from a previous marriage. The Fund refused to

---

1. This Court abolished common law marriage prospectively in the Commonwealth in our decision in *PNC Bank Corp. v. Workers' Compensation Appeal Board (Stamos)*, 831 A.2d 1269 (Pa.Cmwlth.2003). This decision was *disagreed with* by our Superior Court in *Bell v. Ferraro*, 849 A.2d 1233 (Pa.Super.2004), and our Superior Court *declined to extend* our decision in *Stackhouse v. Stackhouse*, 862 A.2d 102 (Pa.Super.2004). Our Supreme Court has not addressed the issue but we look forward to the day that it has the opportunity to reconcile this division between our Courts.

recognize the marriage on the ground that it had not been a party to the Orphans' Court proceeding.

On November 15, 2002, Ross filed a declaratory judgment action against the Fund in the trial court asking for a decree requiring the Fund to recognize her marriage to Adams, provide surviving spouse benefits retroactive to June 19, 2001, pay attorney fees and costs, and award such other relief as the court might deem just. The Fund filed preliminary objections alleging that the complaint failed to state a cause of action on the ground that the Fund could not be bound by a decree entered in another proceeding. The trial court overruled the Fund's objections, concluding that the marriage of Ross and Adams had been "finally decided" and that the Fund had "no standing to object nor to notice of [sic] that Orphans' Court proceeding." The Fund appealed the overruling of its objections to this Court; the appeal was quashed in an opinion and order filed on November 25, 2003 by Senior Judge James R. Kelley. The Fund filed an answer with new matter in the trial court, and both parties moved for judgment on the pleadings. The trial court granted judgment in favor of Ross in an order dated August 30, 2004. That order directed the Fund to pay widow benefits to Ross "retroactive to June 19, 2001 plus interest and to make regular payments during her lifetime." In a supplemental order dated September 7, 2004, the trial court determined that "the amount of widow benefits due as of August 30, 2004 is $43,380.65, plus interest." The trial court granted supersedeas in an order dated October 1, 2004. This appeal followed.

The questions we are asked to determine are 1) whether the Fund is bound by the declaratory judgment of common law marriage in this matter where it was not a party to the proceeding; 2) whether Section 3306 of the Divorce Code, 23 Pa.C.S. § 3306, is constitutional where it permits a person neither joined in a proceeding nor notified of it to be bound by the result; and 3) if the Fund is required to pay benefits, whether it should be required to pay interest.[2]

█ To support its contention that it is not bound by the Orphans' Court order declaring that Ross and Adams were married at common law, the Fund relies solely on our decision in *Allison Park Contractors, Inc. v. Workers' Compensation Appeal Board (Wagner)*, 731 A.2d 234 (Pa. Cmwlth.1999), *petition for allowance of appeal denied*, 561 Pa. 678, 749 A.2d 472 (2000), in which, the Fund says in its brief, this Court "held that a determination of marital status made in the Court of Common Pleas of Allegheny County was not binding on the employer." This is simply not what we said in *Allison Park*. In *Allison Park*, a woman made a claim for workers' compensation death benefits. In support of her claim, she submitted a copy of an order entered in the Court of Common Pleas of Allegheny County by which she and the parents of the deceased consented to treat the relationship between herself and him as that of husband and wife for the purpose of settling his estate. We agreed with the Employer's contention that that consent order was not binding upon the parties in the workers' compensation proceeding because "there was no evidentiary hearing and adjudication by the common pleas court that Claimant was the common law wife of the Decedent." 731 A.2d at 236. The document that Ross has presented to the Fund in this case, howev-

**2.** We are asked to review questions of law; accordingly our standard of review is *de novo* and our scope of review is plenary. *The Medical Shoppe Ltd. v. Wayne Memorial Hospital*, 866 A.2d 455 (Pa.Cmwlth.2005).

er, is an order issued after an "evidentiary hearing and adjudication by the common pleas court" and not a consent order. *Allison Park* supports the proposition that the order Ross secured from the trial court in this matter declaring that she and Adams were married at common law is binding upon the parties to this litigation. Therefore, we conclude that the order of the trial court dated August 23, 2002 that declares that Ross and Adams were married at common law is binding upon the Fund.

We are not dissuaded from this conclusion by the Fund's argument, based on Section 7540(a) of the Declaratory Judgments Act, 42 Pa.C.S. § 7540(a), and Section 3306 of the Divorce Code, 23 Pa. C.S. § 3306, that Ross was required to join it in the original Orphans' Court action.

Section 3306 of the Divorce Code states,

When the validity of a marriage is denied or doubted, either or both of the parties to the marriage may bring an action for a declaratory judgment seeking a declaration of the validity or invalidity of the marriage and, upon proof of the validity or invalidity of the marriage, the marriage shall be declared valid or invalid by decree of the court and, unless reversed upon appeal, the declaration shall be conclusive upon all persons concerned.

The Fund tells us that the phrase "all persons concerned" is "a shorthand reference to those persons whose joinder" is required under Section 7540(a) of the Declaratory Judgments Act, 42 Pa.C.S. § 7540(a), that states, in pertinent part,

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

What the Fund does not tell us is how it reaches that conclusion. The Fund does not tell us what claim or interest it may have had in the Orphans' Court proceeding or what right it may have possessed that could have been prejudiced in that proceeding. The Fund does continue at some length in its brief to convince us that all persons are guaranteed due process of law under both the Pennsylvania and the United States Constitutions. We agree completely with that assertion, but we disagree with the Fund's argument that Section 3306 of the Divorce Code is unconstitutional if it permits the enforcement of a declaration of marriage issued in an action to declare the existence of a common law marriage against an individual or entity not a party to the proceeding in which the decree was issued. Our General Assembly does not intend an absurd result, 1 Pa.C.S. § 1922(1), and the Fund's interpretation of Section 3306 leads to the absurd conclusion that every person or entity who must rely on the fact of the marriage of two persons must be a party to the creation or declaration of that marriage. Nowhere in its brief does the Fund explain the crucial distinction between the declaration of marriage that Ross produced and the marriage certificates that evidence the marriages of the many widows and widowers to whom the Fund is paying benefits today. It is a distinction without a difference. Ross was married to Adams under our law as surely as if she had married him in a formal ceremony after securing a valid license, and the Fund may not treat her any differently. There is simply no basis in law or fact for the Fund's constitutional challenge to Section 3306 of the Divorce Code.

The Fund relies on our decision in *Hutchinson v. Pennsylvania State Employes' Retirement Board*, 738 A.2d 7 (Pa. Cmwlth.1999), *petition for allowance of*

*appeal denied,* 562 Pa. 676, 753 A.2d 821 (2000), to explain why it should not be required to pay interest to Ross. We find the Fund's reliance misplaced. In *Hutchinson,* we explained that interest is "impliedly payable as compensation to a creditor for delay of payment by the debtor whenever a liquidated, or fixed, sum of money is unjustly withheld." *Id.* at 12, quoting *Braig v. Pennsylvania State Employes' Retirement Board,* 682 A.2d 881, 886. The two prerequisites to the running of interest, we said, were that "the debt must have been liquidated with some degree of certainty and the duty to pay it must have become fixed." *Id.* The Fund says that its duty to pay interest becomes fixed when a court determines Ross to be the widow of Adams in a proceeding in which it is joined, or when is it finally determined that it is bound by the Orphans' Court decree of marriage. We disagree. The debt to Ross is fixed with actuarial certainty, and the duty to pay it arose by law and by the order of the trial court of August 30, 2004 as the date Adams died, June 19, 2001.

Accordingly, the order of the Court of Common Pleas of Allegheny County dated August 30, 2004 directing the Fund to pay benefits retroactive to June 19, 2001, plus interest, and the order of that court dated September 7, 2004, finding that the amount owed to Ross as of August 30, 2004, to be $43,380.65, plus interest, are affirmed, and this matter is remanded to the trial court solely for the calculation of the additional amount of principal and the interest owed to Ross.

### ORDER

AND NOW, this 25th day of February 2005, the order of the Court of Common Pleas of Allegheny County dated August 30, 2004 directing the Appellant Fund to pay benefits retroactive to June 19, 2001, plus interest, and the order of that court dated September 7, 2004, finding the amount owed to Appellee Ross as of August 30, 2004, to be $43,380.65, plus interest, are AFFIRMED; and Appellant Fund shall pay to Appellee Ross the sum of $43,380.65 FORTHWITH

AND FURTHER, this matter is remanded to the trial court for the calculation of the additional principal and the interest owed to Ross, calculated from June 19, 2001, which sum shall be paid within thirty (30) days of the date of this order.

Jurisdiction relinquished.