# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Estate of John F. Pancari, Sr., : 
Deceased :
  :
Kathleen D. Gazda, :
          Appellant :
  :
        v. : No. 1304 C.D. 2016
  : Argued: April 4, 2017
Scott Township Police Pension Fund :

**BEFORE: HONORABLE P. KEVIN BROBSON, Judge[1]**
**HONORABLE PATRICIA A. McCULLOUGH, Judge**
**HONORABLE MICHAEL H. WOJCIK, Judge**

**OPINION BY JUDGE BROBSON**             **FILED: December 8, 2017**

       Kathleen Gazda (Gazda) appeals from the order of the Court of Common Pleas of Allegheny County, Orphans' Court Division (Orphans' Court), dated June 30, 2016, which refused to order the Scott Township Police Pension Fund (Pension Fund) to pay benefits to Gazda as the widow of John F. Pancari, Sr. (Decedent). For the reasons set forth below, we affirm the Orphans' Court's order.

## I. BACKGROUND

       Decedent, a beneficiary of the Pension Fund, died on November 25, 2013. On May 9, 2014, Gazda filed for survivor's pension benefits with the Pension Fund, asserting that she was Decedent's common-law spouse. On May 27, 2014, the Pension Fund denied Gazda's application for survivor's benefits

---

[1] This opinion was re-assigned to the authoring Judge on October 19, 2017.

because Gazda lacked sufficient documents to prove a common-law marriage. (Reproduced Record (R.R.) at 180a-98a.)

Following the appeal procedures set forth in the Scott Township Police Pension Plan (Plan),[2] (R.R. at 141a-42a), Gazda appealed to the Board of Commissioners of Scott Township (Board), and the Board assigned the matter to a hearing officer.[3] By decision dated September 26, 2014, the hearing officer found that Gazda failed to prove that a common-law marriage existed between Decedent and herself, and, therefore, she was not entitled to benefits as a surviving spouse. (R.R. at 299a-310a.) Gazda did not appeal this decision.

On February 6, 2015, Gazda filed an estate inheritance tax return and paid the applicable inheritance tax using the zero percent spousal rate as Decedent's common-law spouse. In response, the Pennsylvania Department of Revenue (Revenue) issued a notice of assessment and applied the fifteen percent collateral rate. On September 9, 2015, Gazda filed a petition for citation, appealing the inheritance tax assessments with the Orphans' Court. On November 23, 2015, the Orphans' Court held a hearing and converted the petition for citation into a declaratory judgment action to determine whether a common-law marriage existed. After receiving evidence, the Orphans' Court issued an order deciding that a common-law marriage existed between Gazda and Decedent as of

---

[2] Scott Township created the plan under authority conferred by the act commonly referred to as the Police Pension Fund Act, also known as Act 600, Act of May 29, 1956, P.L. (1955) 1804, *as amended,* 53 P.S. §§ 767-778.

[3] By Resolution 854-14, the Board appointed James S. Conley, Esquire, to serve as the Board's hearing officer under Article VIII of the Plan and to issue a final decision on behalf of the Board. (R.R. 197a-98a.)

September 6, 1998.[4]  Revenue did not appeal and thereafter revised its notice of assessment accordingly.  (R.R. at 2a-6a.)

On March 17, 2016, Gazda filed a second application for survivor's benefits with the Pension Fund, requesting benefits based on the November 23, 2015 Orphans' Court order.  By letter dated April 15, 2016, the Pension Fund denied Gazda's application, concluding that all parties were bound by the hearing officer's September 26, 2014 decision, which no party appealed to the court of common pleas.  (R.R. at 312a-15a.)  Although the letter advised Gazda of her right under the Plan to appeal the determination to the Board for a full hearing, Gazda did not appeal the determination.

Instead, two months later, on June 21, 2016, Gazda filed a motion to enforce order with the Orphans' Court, seeking to compel the Pension Fund to recognize her marriage to Decedent and pay her survivor's benefits.  On June 30, 2016, following oral argument, the Orphans' Court denied Gazda relief.  Gazda thereafter filed a timely appeal in this Court, and the Orphans' Court directed Gazda to file a concise statement of errors complained of on appeal.  Gazda's concise statement raised a single issue—*i.e.*, whether the trial court erred in refusing to enforce its November 23, 2015 order, declaring Gazda to be Decedent's common-law spouse, against the Pension Fund. (R.R. at 8a-9a.)  In an opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the Orphans' Court set forth its reasons for denying Gazda's motion to enforce.  The Orphans' Court explained that under the Local Agency Law, 2 Pa. C.S. §§ 105, 551-55, 751-54, the

---

[4] The Pennsylvania General Assembly abolished common-law marriages, effective January 1, 2005, but did so only prospectively.  Accordingly, common-law marriages otherwise lawful and contracted prior to January 1, 2005, may be enforced.  Section 1103 of the Marriage Law, 23 Pa. C.S. § 1103.

3

Board's September 26, 2014 decision, by its designated hearing examiner, was an adjudication, triggering a right of appeal to the court of common pleas. Section 752 of the Local Agency Law, 2 Pa. C.S. § 752. The Orphans' Court noted that Section 8.08(f) of the Plan expressly defines the Board's decision as "final" and reiterates the right of a claimant for benefits to lodge an appeal under the Local Agency Law.

The Orphans' Court observed that "Gazda simply did not follow the proper appeal procedure," (R.R. at 5a), and it held that the hearing officer's adjudication was final on the issue of whether Gazda was entitled to benefits under the Plan. The Orphans' Court further held that Gazda's motion to enforce, filed nearly 21 months after the Board's final determination on Gazda's first claim for benefits and about two months after the Pension Fund denied her second claim for benefits, was not a substitute for a timely appeal under the Local Agency Law. The Orphans' Court concluded that it lacked the authority to reverse the Pension Plan's denial of benefits. Finally, the Orphans' Court noted that before it issued its declaratory judgment of a common-law marriage between Gazda and Decedent, Gazda's counsel should have notified the Court of the Board's final determination and should have notified the Pension Fund of the declaratory judgment action.

In her brief on appeal, Gazda advances two questions for our review: (1) whether the Orphans' Court's declaratory judgment of a common-law marriage between Gazda and Decedent is binding on the Pension Fund; and (2) whether the existence of a common-law marriage is subject to the Local Agency Law. (Gazda Br. at 11.) As both of these issues are questions of law, our standard of review is *de novo* and our scope of review is plenary. *Med. Shoppe, Ltd. v. Wayne Mem'l Hosp.*, 866 A.2d 455, 459 n.10 (Pa. Cmwlth. 2005).

4

## II.  DISCUSSION

On appeal, Gazda argues that the authority to establish the validity of a common-law marriage "rests solely with the court of common pleas."  (Gazda Br. at 18.)  Gazda contends that once a court establishes the validity of a marriage, the marriage is finalized and is binding upon all persons concerned and, therefore, is subject to neither the Local Agency Law nor attack by third parties, such as the Pension Fund.  In support, Gazda cites to Section 3306 of the Divorce Code, 23 Pa. C.S. § 3306, which provides:

> When the validity of a marriage is denied or doubted, either or both of the parties to the marriage may bring an action for a declaratory judgment seeking a declaration of the validity or invalidity of the marriage and, upon proof of the validity or invalidity of the marriage, the marriage shall be declared valid or invalid by decree of the court and, unless reversed upon appeal, the declaration shall be conclusive upon all persons concerned.

Gazda also relies on this Court's decision in *Ross v. Policemen's Relief and Pension Fund of City of Pittsburgh*, 871 A.2d 277, 280 (Pa. Cmwlth. 2005) (finding that not every party who relies on existence of marriage between two persons must also be party to its declaration), *appeal denied*, 897 A.2d 462 (Pa.), *cert. denied*, 549 U.S. 816 (2006).

Gazda also contends that allowing third parties to challenge the validity of a marriage would result in the possibility of numerous hearings before various agencies impacted by an individual's marital status. (Gazda Br. at 15.)  Further, Gazda contends that the law does not grant a hearing officer jurisdiction over the establishment of a marriage, and that, as such, the hearing officer for the Board never had jurisdiction to determine whether Gazda and Decedent had a common-law marriage.  Gazda argues that after she obtained her declaration of marriage, she

5

became entitled to spousal benefits. More specifically, Gazda contends that the Pension Fund is contractually obligated to pay surviving spouse benefits and has no right to determine its beneficiaries' marital status.

The Pension Fund rejects Gazda's premise that this case is about the question of whether the existence of a marriage is subject to the Local Agency Law. Rather, the Pension Fund contends that what is at issue in this case is the entitlement to benefits under a municipal police pension plan. Act 600 gives Scott Township the authority to establish and administer police pension plans, which includes benefits for surviving spouses. Section 1(a)(2) of Act 600, 53 P.S. §767(a)(2). The Pension Fund argues that under the authority of Act 600, a hearing officer is obligated to determine an applicant's marital status in order to determine entitlement to surviving spouse benefits under the terms of the Plan. Section 1(a)(2) of Act 600 provides:

> Such fund shall be under the direction of the governing body of the borough, town, township or regional police department, and applied under such regulations as such governing body, by ordinance or resolution, may prescribe for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age and service, or disability, and may prescribe for the benefit (i) of surviving spouses . . . .

While Section 3306 of the Divorce Code provides that a "marriage shall be declared valid or invalid by decree of the court," Act 600 provides Scott Township with the authority to establish and administer pension plans, which includes prescribing benefits for surviving spouses of members of the police force and determining eligibility for those benefits. This includes the authority to evaluate a party's marital status in order to determine if that party is eligible for benefits, as opposed to issuing a decree of marriage.

The Pension Fund contends that under its Act 600 authority, it adopted the Plan, which sets forth express procedures for submitting a claim for benefits and challenging the Plan Administrator's initial denial of that claim. Under Article VIII of the Plan, (R.R. 141a-42a), an applicant who wishes to challenge the Plan Administrator's denial of a claim for benefits must appeal to the Board, the local agency here, within sixty days. The Board's decision "shall be final, conclusive and binding on all parties." (Section 8.08(c) of the Plan.) Section 8.08(e) of the Plan expressly provides that a claimant who does not submit to the Plan Administrator a timely claim for benefits or who does not file with the Board a timely appeal from the Plan Administrator's denial of a claim, "shall be deemed to have waived such claim or right to review." Section 8.08(f) of the Plan, however, expressly preserves a claimant's right to appeal an adverse Board adjudication under the Local Agency Law.

Agreeing with the Orphans' Court, the Pension Fund contends that when Gazda chose not to further appeal the Board's September 26, 2014 adjudication to the court of common pleas, under both the Local Agency Law and the provisions of the Plan, the adjudication became final and binding on the parties. *Cunningham v. Se. Pa. Transp. Auth. (SEPTA)*, 914 A.2d 966, 972 n.12 (Pa. Cmwlth.) ("A party to a local agency proceeding may not institute an independent action that challenges the agency's action when the party failed to file a timely appeal from the decision of the local agency"), *appeal denied*, 932 A.2d 77 (Pa. 2007); *Lundy v. City of Williamsport*, 548 A.2d 1339, 1340 (Pa. Cmwlth. 1988) ("We have repeatedly held that failure to appeal a local governmental agency

7

adjudication within 30 days from the date of the order complained of divests the trial court of jurisdiction").[5]

In *Lundy*, Richard H. Lundy, Jr. (Lundy) applied to the local taxing authority to determine the amount of an exemption for improvements made to a building he purchased. *Lundy*, 548 A.2d at 1340. His application was denied and he appealed to the Local Economic Revitalization Tax Assistance (LERTA) appeal board. *Id.* By decision dated April 26, 1985, the appeal board denied his application as untimely. *Id.* Two further appeals were also denied on January 14, 1986, and March 25, 1986. *Id.* On September 15, 1986, Lundy filed an equity action, seeking to compel the city to award him benefits on the grounds of equitable estoppel. *Id.* The common pleas court found it did not have subject matter jurisdiction because Lundy did not appeal the local administrative agency's determination. *Id.*

This Court held that the "failure to appeal a local governmental agency adjudication within 30 days from the date of the order complained of divests the trial court of jurisdiction." *Id.* This Court further noted that Lundy did not argue that the statutory remedy was inadequate. *Id.* Though Lundy argued he had an "independent right to pursue a separate equity action in the same case four months after his statutory right of appeal" had expired, this Court held that, while a petitioner could

---

[5] In *Retirement Board of Allegheny County v. Colville*, 852 A.2d 445 (Pa. Cmwlth. 2004), instead of filing a statutory appeal under the Local Agency Law following an adverse adjudication by the Retirement Board of Allegheny County (RBAC), the claimant in that case initiated a civil action in the Court of Common Pleas of Allegheny County by writ of summons, followed ten months later by a complaint. Upon the filing of a preliminary objection to the complaint, raising a failure to exhaust administrative remedies, the court of common pleas sustained the preliminary objection, in part, as to the complaint for declaratory relief. It held, however, that it would consider the writ of summons as a timely appeal from the RBAC under the Local Agency Law. Here, Gazda did not file her motion to enforce in the Orphans' Court until well after the thirty-day period to appeal the Board's final determination had expired. Accordingly, the motion to enforce could not have been considered a timely statutory appeal under the Local Agency Law.

8

seek equitable relief at the same time he pursued an agency appeal or could request pre-enforcement review of administrative regulations, a "court's equity powers are limited by the existence of an adequate statutory remedy." *Id.* at 1341 (citing *Arsenal Coal Co. v. Dep't of Envtl. Res.*, 477 A.2d 1333 (Pa. 1984)). Further, "[i]n local governmental agency appeals jurisdiction and remedy is conferred by statute. A court has no equity powers if it has no jurisdiction." *Lundy*, 548 A.2d at 1341. This Court found that Lundy could not file an equity action after his statutory remedy to the same relief expired, because he had failed to appeal the local governmental agency adjudication and because he could have raised an estoppel argument in an appeal from the LERTA appeal board. *Id.*

Similarly, in *Cunningham*, this Court held that James Cunningham (Cunningham) was bound by the 30-day statutory time limit for filing an appeal where he waited nearly seven months to institute a civil action on breach of contract, breach of good faith and fair dealing, fraud, misrepresentation, deceit, and civil conspiracy. *Cunningham*, 914 A.2d at 972.

Gazda counters that the Pension Fund's reliance on *Lundy* and *Cunningham* is misplaced. More specifically, Gazda contends that *Lundy* and *Cunningham* involved "the application of the Pennsylvania Local Agency Law to determinations by a hearing officer interpreting provisions of the governing document," whereas, here, a hearing officer has neither the authority nor the jurisdiction to decide if a common-law marriage exists. (Gazda Br. at 17.) However, as the Pension Fund argues, the Board, through its hearing officer, issued a final determination on Gazda's eligibility for Plan benefits, not on the existence or nonexistence of her marriage to Decedent. Act 600 authorizes the Pension Fund to determine who is eligible for benefits. The Plan Administrator for the Pension Fund

9

made an initial determination that Gazda was not entitled to benefits under the Plan as Decedent's common-law spouse. Following the procedures set forth in the Plan, Gazda appealed that determination to the Board. The Board, through its hearing officer, held a hearing and ultimately issued an adjudication, finding Gazda ineligible for benefits under the Plan. Gazda did not appeal, which means, under the terms of the Plan, the Local Agency Law, and this Court's precedent (*e.g.*, *Lundy* and *Cunningham*), Gazda thereafter lost her ability to challenge the Board's decision.

In *Wimer v. Pennsylvania Employees Benefit Trust Fund (PEBTF)*, 939 A.2d 843 (Pa. 2007), a plan beneficiary brought a declaratory judgment action in the court of common pleas, challenging PEBTF's termination of his benefits and seeking an order of reinstatement. PEBTF contended, *inter alia*, that the common pleas court should dismiss the action because the plan beneficiary failed to exhaust the internal administrative remedies set forth in the plan documents, which required an appeal of the termination to PEBTF's Board of Trustees. In granting summary judgment in favor of Wimer and against PEBTF, the common pleas court rejected PEBTF's position, as did the Pennsylvania Superior Court on appeal.

On allowance of appeal, the Pennsylvania Supreme Court considered the following question: "[W]hether a recipient of healthcare benefits paid by [PEBTF] is contractually obligated, when challenging a . . . termination of healthcare benefits, to exhaust internal appeals to PEBTF's Board of Trustees prior to seeking recourse through filing an action for declaratory judgment with a court." *Wimer*, 939 A.2d at 845. The Supreme Court affirmed, concluding, in part, that although the plan documents provided for a right of appeal to the Board of Trustees, the "language does not impose an affirmative obligation for them to pursue such

10

remedies as a prerequisite to commencing litigation." *Id.* at 850. The Supreme Court declined to "read into" the plan documents an exhaustion requirement. *Id.* at 850-51.

As noted above, the Plan here expressly mandates exhaustion of contractual remedies. Section 8.08 of the Plan provides that "[a]ny person whose application for benefits is denied . . . *shall first* seek a resolution of such claim under the procedure hereinafter set forth." (Emphasis added.) Further, Section 8.08(e) provides that a claimant who fails to submit a timely claim for benefits or a timely notice of appeal to the Board from an adverse determination "shall be deemed to have waived such claim or right of review." Section 8.08(f), however, expressly notes that a claimant's right to appeal an adverse Board adjudication under the Local Agency Law is preserved. Accordingly, unlike the plan documents in *Wimer*, the Plan here expressly requires exhaustion of contractual remedies prior to seeking relief in a court.

When, on May 27, 2014, the Plan Administrator denied Gazda's application for survivor's benefits because Gazda lacked sufficient documents to prove a common-law marriage, (R.R. at 180a-98a), Gazda followed the procedures set forth in the Plan and appealed to the Board. After the Board's hearing officer rendered his adverse determination, however, Gazda did not appeal that decision to the court of common pleas, as was her right under the Local Agency Law and Section 8.08(f) of the Plan. Under the plain terms of the Plan, that determination then became "final, conclusive and binding" on Gazda.

Had Gazda filed a statutory appeal from that adjudication to the court of common pleas, there is no doubt that the common pleas court could have reviewed the issue of whether Gazda established that she was the common-law spouse of

11

Decedent and thus entitled to benefits under the Plan.[6] Although Section 3306 of the Divorce Code is a vehicle by which disputes over the existence or nonexistence of a marriage can be resolved, it is by no means the exclusive vehicle. In *Cooney v. Workers' Compensation Appeal Board (Patterson UTI, Inc.)*, 94 A.3d 425 (Pa. Cmwlth. 2014), for example, a workers' compensation claimant sought death benefits as the surviving common-law spouse of a fatally-injured worker. Following the statutory process for claim petitions, both a workers' compensation judge and the Workers' Compensation Appeal Board found that the claimant failed to prove her entitlement as a widow to death benefits under Section 307(3) of the Workers' Compensation Act.[7] On appeal, this Court affirmed, concluding that the claimant's alleged common-law marriage was not valid under the laws of Pennsylvania. *Cooney*, 94 A.3d at 435.

In *Vignola v. Vignola*, 39 A.3d 390 (Pa. Super. 2012), Nancy Vignola (Nancy) filed a *complaint in divorce* in the court of common pleas, claiming to be the common-law wife of Cort Vignola (Cort). Prior to Nancy commencing her complaint in divorce, she filed a separate action in common pleas, seeking child and spousal support against Cort. Ultimately, the common pleas court denied Nancy's claim for spousal support, concluding that she failed to establish that she was Cort's common-law spouse. When Nancy filed her complaint for divorce, Cort countered by filing within the divorce proceeding (*i.e.*, he did not commence a separate civil action) a petition under Section 3306 of the Divorce Code for a declaratory judgment that he and Nancy were not married, pointing to the prior judicial determination in

---

[6] In addition, even if Gazda did not prevail on her statutory appeal to the common pleas court, she would have had a further right of appellate review by this Court. 42 Pa. C.S. § 762(a)(4).

[7] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 561.

the spousal support case. The common pleas court granted the petition for declaratory judgment, holding that Nancy was collaterally estopped from asserting that she and Cort were married. The Superior Court affirmed, concluding that Nancy was collaterally estopped from asserting a common-law marriage in the divorce proceeding where the common pleas court had already determined her marital status in the prior spousal support proceeding. *Vignola*, 39 A.3d at 394-95.

It is true that the Board's adjudication predated the Orphans' Court's declaration that Gazda was Decedent's common-law spouse. Even if we were to hold that this subsequent declaration somehow revived Gazda's right to benefits under the Plan, the result would not change. Following the Orphans' Court's decision, Gazda filed a second claim for benefits with the Pension Fund. The Plan Administrator rejected it by letter dated April 15, 2016—not because it refused to recognize the Orphans' Court's declaration of marriage, but because the Plan Administrator concluded that the Board's prior, unappealed adjudication, concluding that Gazda was not entitled to Plan benefits, was binding. (R.R. at 315a.)[8] As evidenced by her appeal from the Plan Administrator's initial determination, Gazda knew that she could appeal this second determination to the Board for an adjudication under the procedures set forth in Article VIII of the Plan. She had sixty days to file that appeal. (Section 8.08(c) of the Plan.) This time, however, she chose not to even appeal the Plan Administrator's determination to the Board. Instead, she filed her motion to enforce under the caption of Decedent's estate in the Orphans' Court, seeking a determination that she was eligible for Plan

---

[8] The dissent claims that we are holding that Gazda "is not married for purposes of receiving pension benefits." (Dissent at 1.) As noted above, however, this is clearly not the case. Our decision here does not in any way call into question Gazda's status as Decedent's widow. At issue in this case is Gazda's entitlement to surviving spouse benefits under the Plan, not the validity of her marriage to Decedent.

13

benefits. There is, however, no question that Gazda had an available and adequate remedy under the terms of the Plan and the Local Agency Law to address her second claim for benefits. She chose not to pursue them. As a result, even if we assume Gazda could file a new claim for benefits following the Orphans' Court's declaration, the Plan Administrator's decision on that new claim is also final and binding because Gazda failed to follow the contractual procedures set forth in the Plan and exercise her right of appeal under the Local Agency Law.

Nevertheless, Gazda argues that our prior decision in *Ross* controls. In *Ross*, Audrey Ross (Ross) and Gregory Adams (Adams) cohabited for approximately 11 years prior to Adams's death on June 19, 2001. Following Adams's death, Ross applied to the Policemen's Relief and Pension Fund of the City of Pittsburgh (Pittsburgh Fund) for surviving spouse benefits. The Pittsburgh Fund, however, informed Ross that she would have to prove that she and Adams were married in order to receive surviving spouse benefits. Thereafter, and following a contested proceeding involving Adams's daughters from a prior marriage, the Orphans' Court Division of the Allegheny County Court of Common Pleas issued an order declaring Ross Adams's common-law spouse as of August 23, 2002. When Ross presented the order to the Pittsburgh Fund, the Pittsburgh Fund "refused to recognize the marriage on the ground that it had not been a party to the Orphans' Court proceeding" and rejected Ross's claim for benefits. *Ross*, 871 A.2d at 278-79.

Ross then filed a declaratory judgment action against the Pittsburgh Fund on November 15, 2002, seeking a decree to require the Pittsburgh Fund to recognize the marriage and provide retroactive surviving spouse benefits. The common pleas court held in Ross's favor. The Pittsburgh Fund appealed to this Court, arguing that it was not bound by the declaratory judgment of a common-law

14

marriage because it was not a party to that proceeding and that Section 3306 of the Divorce Code was unconstitutional "where it permits a person neither joined in a proceeding nor notified of it to be bound by the result." *Id.*

This Court held that the Pittsburgh Fund was bound by the order that declared Ross and Adams married at common law, reasoning that the court issued the order after an "evidentiary hearing and adjudication." *Id.* at 280. This Court further found that a declaration of a common-law marriage is enforceable "against an individual or entity not a party to the proceeding in which the decree was issued." *Id.* We reasoned that the General Assembly did not intend that "every person or entity who must rely on the fact of the marriage of two persons must be a party to the creation or declaration of that marriage." *Id.* Further, this Court stated that the Pittsburgh Fund could not treat Ross any differently than if she was married to Adams in a formal ceremony after securing a valid license. *Id.* Accordingly, we affirmed the common pleas court and directed the Pittsburgh Fund to pay retroactive benefits to Ross. *Id.* at 281.

*Ross* is distinguishable from the present case. When Ross, the putative common-law spouse, applied for benefits from the Pittsburgh Fund, the Pittsburgh Fund informed her that she would be required to prove that she and Adams were married. Instead of going forward to present evidence to the Pittsburgh Fund, Ross sought and obtained a court order, declaring the validity of her common-law marriage. Importantly, in *Ross*, no party raised any issue with respect to exhaustion of plan/contractual remedies or the Local Agency Law. More specifically, the Pittsburgh Fund did not contend that its plan document imposed mandatory and binding claim procedures or that the common pleas court lacked the authority or jurisdiction to decide the dispute.

15

Here, by contrast, Gazda initiated and prosecuted her claim for pension benefits before the Plan Administrator and then the Board to conclusion, *before* securing a court order recognizing her common-law marriage more than a year later. She then went back to the Plan Administrator a second time, but the Plan Administrator rejected her second claim for benefits in light of the finality of the Board's earlier determination on her first claim for benefits. When Gazda thereafter sought the aid of the Orphans' Court, the Orphans' Court denied her relief, concluding properly that the unappealed decision by the Board's hearing officer was final and binding on Gazda because she did not exercise her appeal rights under the Plan and the Local Agency Law. For the reasons explained above, we cannot say that the Orphans' Court erred in reaching its decision under the facts and circumstances in this case.

## III. CONCLUSION

Gazda failed to exhaust her contractual remedies under the Plan not once, but twice. The clear language of the Plan makes exhaustion mandatory before a claimant may seek relief from a court. Accordingly, for the reasons set forth above, the Orphans' Court appropriately denied Gazda's motion to enforce.

_____
P. KEVIN BROBSON, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Estate of John F. Pancari, Sr., Deceased | : | |
| | : | |
| | : | |
| Kathleen D. Gazda, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1304 C.D. 2016 |
| | : | |
| Scott Township Police Pension Fund | : | |

## *<u>ORDER</u>*

AND NOW, this 8th day of December, 2017, the order of the Court of Common Pleas of Allegheny County, Orphans' Court Division, dated June 30, 2016, is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Estate of John F. Pancari, Sr.,   :
Deceased   :
  :
Kathleen D. Gazda,   :
          Appellant   :
  :  No.  1304 C.D. 2016
        v.   :
  :  Argued:  April 4, 2017
Scott Township Police Pension Fund   :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

DISSENTING OPINION
BY JUDGE McCULLOUGH              FILED:  December 8, 2017


Kathleen Gazda (Gazda) is either married or she is not. The Majority recognizes that Claimant is married pursuant to a decree from the Court of Common Pleas of Allegheny County, Orphans' Court Division (Orphans' Court), but concludes that she is not married for purposes of receiving pension benefits. Such a result ignores settled law that orphans' court's determinations are "binding upon the whole world irrespective of whether the persons affected were parties or were entitled to be made parties to the litigation in which the decree was entered." *Wesner's Estate*, 11 A.2d 521, 523 (Pa. Super. 1940); *see also Ross v. Policemen's Relief and Pension Fund of City of Pittsburgh*, 871 A.2d 277, 280 (Pa. Cmwlth. 2005), *appeal denied*, 897 A.2d 462 (Pa. 2006), *cert. denied*, 549 U.S. 816 (2006) (order from orphans' court division declaring parties married at common law is

binding on a police pension fund). As a judicially-recognized common law spouse of John F. Pancari, Sr. (Decedent), Gazda is entitled to survivor's pension benefits from the Scott Township Police Pension Fund (Pension Fund). Therefore, I must dissent.

Act 600, also known as the Police Pension Fund Act, Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §§767-778, provides Scott Township with the authority to establish and administer pension plans, which includes prescribing benefits for surviving spouses of members of the police force. In addressing police pension funds, section 1(a)(2) of Act 600 states:

> Such fund shall be under the direction of the governing body of the borough, town, township or regional police department, and applied under such regulations as such governing body, by ordinance or resolution, may prescribe for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age and service, or disability, and may prescribe for the benefit (i) of surviving spouses ….

53 P.S. §767(a)(2). While prescribing benefits for surviving spouses gives the Pension Fund the authority to evaluate a party's marital status in order to determine if that party is indeed a surviving spouse and therefore eligible for benefits, Act 600 does not offer guidance on how to proceed when the validity of a party's marital status is in doubt, particularly as it relates to common law marriages.

Indeed, Pennsylvania recognizes two types of marriages: ceremonial and common law. *In re Estate of Manfredi*, 159 A.2d 697 (Pa. 1960). A ceremonial marriage is "performed by a religious or civil authority" whereas a common law marriage is "an express agreement of the parties without ceremony." *Id.* at 700. Although the Pennsylvania Legislature abolished common law marriages, effective

January 1, 2005, common law marriages contracted prior to January 1, 2005, shall be legally recognized under section 1103 of the Divorce Code, 23 Pa.C.S. §1103.

Section 3306 of the Divorce Code addresses how to proceed when the validity of a party's marriage is denied or in doubt, providing:

> When the validity of a marriage is denied or doubted, either or both of the parties to the marriage may bring an action for a declaratory judgment seeking a declaration of the validity or invalidity of the marriage and, upon proof of the validity or invalidity of the marriage, the marriage shall be declared valid or invalid by decree of the court **the declaration shall be conclusive upon all persons concerned.**

23 Pa.C.S. §3306 (emphasis added). Further, the Superior Court has held that "the proper procedure for obtaining legal recognition of a common law marriage is the filing of a declaratory judgment action." *In re Estate of Carter*, 159 A.3d 970, 974 (Pa. 2017); *Vignola v. Vignola*, 39 A.3d 390, 392-93 (Pa. Super. 2012).

In this case, Gazda filed an action with the Orphans' Court on September 9, 2015, which was converted by the Orphans' Court into a declaratory judgment action. While this action was filed subsequent to the initial proceedings before the Pension Fund and its Board of Commissioners, Gazda did obtain her decree of common law marriage prior to her filing of a second application with the Pension Fund. However, the Pension Fund refused to consider this application and decree on the basis of Gazda's failure to appeal the determination of the hearing officer appointed by the Board of Commissioners, which the Majority now affirms.

By doing so, the Majority essentially allows the Pension Fund to avoid its obligations under its own pension plan and ignore an order of the Orphans' Court declaring Gazda to be Decedent's spouse. As the Majority notes, Gazda relies on this Court's prior decision in *Ross* for support, wherein we held that the Policemen's

Relief and Pension Fund of City of Pittsburgh (Pittsburgh Fund) was bound by an Orphans' Court order declaring Audrey Ross (Ross) and Gregory Adams (Adams) to be married at common law.

In that case, Ross and Adams cohabited for approximately 11 years prior to Adams' death on June 19, 2001. Following Adams' death, Ross applied to the Pittsburgh Fund for surviving spouse benefits, which then requested proof that she and Adams were married. Ross subsequently obtained an order from the Orphans' Court on August 23, 2002, declaring that a common law marriage existed between Adams and herself. However, the Pittsburgh Fund "refused to recognize the marriage on the ground that it had not been a party to the Orphans' Court proceeding." *Id.* at 278-79.

Ross then filed a declaratory judgment action on November 15, 2002, seeking a decree to require the Pittsburgh Fund to recognize the marriage and provide retroactive surviving spouse benefits. The trial court held in Ross' favor and the Pittsburgh Fund appealed to this Court, arguing that it was not bound by the declaratory judgment of a common law marriage where it was not a party to the proceeding and that section 3306 of the Divorce Code was unconstitutional "where it permits a person neither joined in a proceeding nor notified of it to be bound by the result." *Id.*

This Court held that the order declaring Ross and Adams were married at common law was binding upon the Pittsburgh Fund, reasoning that it was issued after an "evidentiary hearing and adjudication" and, further, that a declaration on a common law marriage is enforceable "against an individual or entity not a party to the proceeding in which the decree was issued." *Id.* at 280. We reasoned that "Our General Assembly does not intend an absurd result, 1 Pa.C.S. §1922(1), and the

Fund's interpretation of Section 3306 leads to the absurd conclusion that every person or entity who must rely on the fact of the marriage of two persons must be a party to the creation or declaration of that marriage." *Id.* Further, we held that the Pittsburgh Fund may not treat Ross any differently than if she was married to Adams in a formal ceremony after securing a valid license. *Id.*

We emphasized in *Ross* that "Nowhere in its brief does the Fund explain the crucial distinction between the declaration of marriage that Ross produced and the marriage certificates that evidence the marriages of the many widows and widowers to whom the Fund is paying benefits today. It is a distinction without a difference." *Id.* The Majority's decision in this case also creates a distinction without a difference and effectively allows the Pension Fund to forever avoid paying benefits to Decedent's common law spouse.

Here, as in *Ross*, Gazda applied for spousal benefits and was rejected because the Pension Fund found that she was not married. Unlike in *Ross*, Gazda appealed this decision to the Board of Commissioners and was denied again on the same grounds. Gazda subsequently went to the Orphans' Court and, in a declaratory judgment action, as in *Ross*, obtained a decree of marriage and returned to the Pension Fund to re-apply for benefits. Nevertheless, the Pension Fund rejected this application on the basis that she failed to appeal the Board of Commissioners' decision in accordance with the Pennsylvania Local Agency Law,[1] thereby rendering the decision of the hearing officer for the Board of Commissioners as final and binding. The Orphans' Court agreed, as does the current Majority.

Despite being recognized as Decedent's common law spouse by the Orphans' Court, Gazda will not be recognized as such by the Pension Fund for the

---

[1] 2 Pa.C.S. §§551-555, 751-754.

PAM - 5

purpose of obtaining survivor's pension benefits. Since Decedent and Gazda were legally married, she is entitled to these benefits. Moreover, it bears repeating that orphans' court determinations are "binding upon the whole world irrespective of whether the persons affected were parties or were entitled to be made parties to the litigation in which the decree was entered." *Wesner's Estate*, 11 A.2d at 523; *Ross*. While the Majority attempts to distinguish *Ross* on the basis of the differing procedural histories between that case and the present case, the fact remains that the Pension Fund is bound by the Orphans' Court's order declaring Decedent and Gazda to be married at common law. The Pension Fund should have recognized the same when Gazda reapplied for benefits in March of 2016.

In holding that Gazda was required to appeal the determination of the Board of Commissioner to the common pleas court in accordance with the Local Agency Law, the Majority cites to the plan documents and distinguishes an opinion from our Supreme Court in *Wimer v. Pennsylvania Employees Benefit Trust Fund (PEBTF)*, 939 A.2d 843 (Pa. 2007). As the Majority notes, in *Wimer*, a plan beneficiary brought a declaratory judgment action in the court of common pleas, challenging PEBTF's termination of his benefits and seeking an order of reinstatement. PEBTF contended, *inter alia*, that the common pleas court should dismiss the action because the plan beneficiary failed to exhaust the internal administrative remedies set forth in the plan documents, which required an appeal of the termination to PEBTF's Board of Trustees. In granting summary judgment in favor of the plan beneficiary and against PEBTF, the common pleas court rejected PEBTF's position, as did the Pennsylvania Superior Court on appeal.

On allowance of appeal, the Pennsylvania Supreme Court considered: "[W]hether a recipient of healthcare benefits paid by [PEBTF] is contractually

obligated, when challenging a . . . termination of healthcare benefits, to exhaust internal appeals to PEBTF's Board of Trustees prior to seeking recourse through filing an action for declaratory judgement with a court." *Wimer*, 939 A.2d at 845. The Supreme Court affirmed, concluding, in part, that although the plan documents provided for a right of appeal to the Board of Trustees, the "language does not impose an affirmative obligation for them to pursue such remedies as a prerequisite to commencing litigation." *Id.* at 850. The Supreme Court declined to "read into" the plan documents an exhaustion requirement. *Id.* at 850-51.

Nonetheless, the Majority here essentially "reads into" the plan documents and proceeds to distinguish *Wimer* from the present case on the basis that the Pension Fund's plan documents state that an applicant who is denied "shall first seek a resolution of such claim under the procedure hereinafter set forth," which includes a timely appeal to the Board of Commissioners, and cautions that the failure to file the same will be deemed a waiver of the claim and any right to review. *See* Section 8.08 of the Scott Township Police Pension Plan.

However, the Majority neglects that Gazda followed this very procedure. Following the initial denial, she appealed to the Board of Commissioners, who appointed a hearing examiner to proceed with the case. Following hearings, the hearing examiner upheld the denial on the basis of a lack of sufficient evidence of a common law marriage between Decedent and Gazda. Realizing that any further appeal would be futile without such proof, Gazda took the necessary and required step of obtaining a decree of common law marriage from the Orphans' Court, which the Pension Fund refused to recognize upon her re-application for benefits. Contrary to the Majority, Gazda exhausted her contractual

remedies herein and, as such, Gazda's judicially-recognized common law marriage should entitle her to survivor's pension benefits.

For these reasons, I would reverse the order of the Orphans' Court denying Gazda's motion to enforce its previous decree which recognized her common law marriage to Decedent.[2]

_____
PATRICIA A. McCULLOUGH, Judge

---

[2] The Orphans' Court, in denying Gazda's motion to enforce, also held that it did not have the authority to order the Pension Fund to reverse its denial via a motion because this authority belonged with the court of common pleas in the civil division. (R.R. at 5a-6a.) However, this holding ignores section 952 of the Judicial Code, which states, in pertinent part, that "In a court of common pleas having two or more divisions each division of the court is vested with the full jurisdiction of the whole court. . . ." 42 Pa.C.S. §952.